STATE OF NORTH CAROLINA v. ROBERT EARL SPENCER

No. 9426SC345

(Filed 1 August 1995)

## Evidence and Witnesses § 1763 (NCI4th)— plethysmograph test—lack of reliability—psychologist's opinion based on test properly excluded

In a prosecution of defendant for first-degree sexual offense and taking indecent liberties with a minor, the trial court did not abuse its discretion in excluding the opinion testimony of a clinical psychologist who specialized in sexual dysfunction concerning the likelihood that defendant committed the offenses charged to the extent that the testimony was based on the results of a penile plethysmograph, in view of the lack of general acceptance of the test's validity and utility and therefore its reliability for forensic purposes in the scientific community.

**Am Jur 2d, Expert and Opinion Evidence § 227.**

Appeal by defendant from judgments entered 5 November 1993 by Judge William H. Freeman in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 January 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery for defendant-appellant.*

MARTIN, John C., Judge.

Defendant was indicted for first degree sexual offense, a violation of G.S. § 14-27.4(a)(1), and taking indecent liberties with a child, a violation of G.S. § 14-202.1. He entered pleas of not guilty. A detailed recitation of the evidence is unnecessary to our determination of the issues presented by this appeal. In summary, the State presented evidence tending to show that on several occasions during the period from September 1992 until February 1993, defendant engaged in sexual activity, including fellatio, masturbation, and genital touching, with K.B., his five-year-old stepdaughter, while her mother was at work. K.B. told her older sister about these activities in February

1993 and an investigation ensued which led to the present charges against defendant.

Defendant testified that he had spanked K.B. on occasion for disciplinary reasons, that K.B. had come into his bedroom on a couple of occasions, that she had once seen him while he was showering, and that she had an active imagination. He denied, however, any sexual activity with K.B. Defendant also offered the testimony of Dr. Eugenia Gullick, a clinical psychologist specializing in sexual dysfunction, with respect to her opinions based upon a penile plethysmograph test administered to defendant. After a *voir dire*, the trial court sustained the State's objection to Dr. Gullick's opinion testimony to the extent such opinions were based on the penile plethysmograph test, but indicated that Dr. Gullick would be permitted to testify as to any opinions which were not based on the plethysmograph. Defendant declined to offer any further testimony by Dr. Gullick.

Defendant was convicted by the jury. He appeals from judgments entered on the verdicts.

---

In this case, the record on appeal contains fourteen assignments of error; only four of those assignments of error are presented and discussed in defendant's brief. "Questions raised by assignments of error but not presented and discussed in a party's brief are deemed abandoned." *State v. Wilson*, 289 N.C. 531, 535, 223 S.E.2d 311, 313 (1976), *citing* N.C.R. App. P. 28. Defendant's remaining assignments of error are therefore deemed abandoned. N.C.R. App. P. 28(a); *In re Appeal from Environmental Management Comm.*, 80 N.C. App. 1, 341 S.E.2d 588, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 139 (1986).

I.

The primary issue presented by this appeal involves the exclusion of Dr. Gullick's testimony regarding her opinions which were based, at least in part, upon an evaluation of defendant with an instrument known as a penile plethysmograph. Had she been permitted to do so, Dr. Gullick would have testified to her opinion, based upon a personal interview of defendant, standardized psychological testing, and the plethysmograph testing, that although defendant has significant psychological problems, there was no evidence of his being sexually aroused by prepubescent children and the plethysmograph showed an "essentially . . . normal arousal pattern." Defendant sought to establish, by this testimony, that he did not exhibit characteristics

commonly associated with persons who are likely to commit sexual crimes against children, and therefore, it was less likely that he committed the acts charged in this case. After a lengthy *voir dire*, the trial court sustained the State's objection to the testimony, insofar as it was based on the results of the plethysmograph, but indicated that Dr. Gullick would be permitted to state her opinion to the extent it was based on factors other than the plethysmograph. The trial court determined that the instrument was of questionable reliability; that the testimony was not relevant; and that even if relevant, its probative value was outweighed by its prejudicial effect.

The question of the admissibility of an expert witness' opinion testimony based on the results of penile plethysmograph testing has never been directly addressed by the appellate courts of this State. *See State v. McKinney*, 110 N.C. App. 365, 430 S.E.2d 300 (1993). In North Carolina, a qualified expert (the State does not dispute Dr. Gullick's qualifications as an expert clinical psychologist specializing in sexual dysfunction) may give opinion testimony on scientific matters if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 702 (1992). The expert may base his opinion on matters or data "perceived by or made known to him at or before the hearing", and the data itself need not be independently admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." N.C. Gen. Stat. § 8C-1, Rule 703 (1992).

Implicit in these rules is the precondition that the matters or data upon which the expert bases his opinion be recognized in the scientific community as sufficiently reliable and relevant. *See Daubert v. Merrell Dow*, 509 U.S. ——, 125 L.Ed.2d 469 (1993); *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984); N.C. Gen. Stat. § 8C-1, Rule 703 (1992). Whether scientific opinion evidence is sufficiently reliable and relevant is a matter entrusted to the sound discretion of the trial court. *State v. Catoe*, 78 N.C. App. 167, 336 S.E.2d 691 (1985), *disc. review denied*, 316 N.C. 380, 344 S.E.2d 1 (1986). "Reliability of a scientific procedure is usually established by expert testimony, and the acceptance of experts within the field is one index, though not the exclusive index, of reliability." *State v. Pennington*, 327 N.C. 89, 98, 393 S.E.2d 847, 852 (1990). Generally, our courts have focused on the following indicia of reliability: (1) the expert's professional background in the field; (2) the use of visual aids before the jury so that the jury is not asked "to sacrifice its independence by accepting [the]

scientific hypotheses on faith"; and (3) independent research conducted by the expert. *Id.* at 98, 393 S.E.2d at 853, *quoting Bullard,* 312 N.C. at 150-51, 322 S.E.2d at 382.

At the *voir dire* hearing, Dr. Gullick testified that she utilizes penile plethysmograph testing as a part of her assessment of the sexual arousal patterns of her patients. She explained the operation of the instrument:

> The penile plethysmograph attempts to measure physiological indications of sexual arousal in response to particular stimulus materials. The individual is placed in a room and a mercury strain gauge is placed around the penis so that the circumference of the penis can be measured. And this mercury strain gauge is capable of measuring slight increases in circumference, many times before they are noticeable to the man himself.

> The individual is then presented with sequential stimulus materials, auditory and visual, encouraging him to think about and look at materials indicative of sexual activity with different ages of people, different genders and different sexual activities.

Dr. Gullick remarked that the plethysmograph has been extensively studied and recently shown to be ninety-five percent accurate in discriminating between individuals "who had committed sexual offenses against children and a control group that was randomly drawn from the population." Finally, she distinguished between the plethysmograph and the polygraph:

> The plethysmograph . . . directly measures the outside evidence of sexual arousal. We know, it's established throughout the literature that when a man becomes sexually aroused, there is engorgement of the penis. It's a one-to-one relationship.

> In a polygraph, galvanic skin responses are measured, and we have to make a leap of logic to think that galvanic skin response is related to anxiety, and therefore truthfulness. And it is that jump in logic that leads to a lack of reliability at times with that instrument . . . .

> We know when the penis becomes engorged, we are measuring sexual arousal. So it's much more akin to say blood pressure measurement.

The State's expert witness, Dr. Michael Tyson, was a clinical and forensic psychologist specializing in the field of sexual criminal behavior. He testified that he was familiar with the plethysmograph through his studies in behavior therapy and had read literature on the test and discussed it with other psychologists, although he did not use the instrument in his practice. Dr. Tyson testified that it was generally accepted in the mental health community by both proponents and opponents of the plethysmograph "that the plethysmograph data does not give any evidence that is useful in determining whether an individual did or did not commit a specific act." He explained that while he agreed with Dr. Gullick that the plethysmograph accurately measures the engorgement of blood to the penis, there is substantial disagreement as to the extent to which the penile response is subject to voluntary control and as to whether the penile response as measured by the plethysmograph can then be generalized to anything else pertaining to sexual behavior. Dr. Tyson testified that the fact that the plethysmograph does not show evidence of sexual arousal when a subject is shown stimulus materials involving children does not lead to a valid conclusion that the person will not engage in sexual activities with children. He stated that the vast majority of individuals who commit sexual offenses against children are not sexually aroused by stimulus material involving children; "their primary sexual orientation is to adults and they molest children by fantasizing that they are engaging in relationships with appropriate sex partners." In Dr. Tyson's opinion, the plethysmograph has "very limited forensic utility", "the forensic validity of the instrument is highly suspect", and "the utility of what it [the plethysmograph] shows is highly questionable and the possibility of misleading the trier of fact or the jury is very high, dangerously high . . . ."

We agree with the trial court that the evidence before it by no means established the reliability of the plethysmograph; there is a substantial difference of opinion within the scientific community regarding the plethysmograph's reliability to measure sexual deviancy. *See e.g.*, Barker and Howell, *The Plethysmograph: A Review of Recent Literature*, 20 Bull. Am. Acad. of Psychiatry and Law 13 (1992) (identifying several problems with the reliability of the plethysmograph, namely "lack of standards for training and interpretation of data, lack of norms and standardization and susceptibility of the data to false negatives and false positives," and concluding that "despite the sophistication of the current equipment technology, a question remains whether the information emitted is a valid and reli-

able means of assessing sexual preference"); *see also*, Myers, et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1, 134-35 (1989) (stating that a problem with the reliability of penile plethysmograph testing is that penile response is subject to voluntary control, and the test should not be used to determine whether or not an individual has engaged in deviant behavior). Other jurisdictions have also found the plethysmograph unreliable as a measure of sexual deviancy. *See e.g.*, *Gentry v. State*, 213 Ga.App. 24, 443 S.E.2d 667 (1994); *In the Interest of A.V.*, 849 S.W.2d 393 (Tex.App. 1993); *Cooke v. Naylor*, 573 A.2d 376 (Me. 1990); *Nelson v. Jones*, 781 P.2d 964 (Alaska 1989), *cert. denied*, 498 U.S. 810, 112 L.Ed.2d 20 (1990); *Dutchess County Dept. of Social Services on behalf of T.G. v. Mr. G.*, 141 Misc.2d 641, 534 N.Y.S.2d 64 (1988); *People v. John W.*, 185 Cal.App.3d 801, 229 Cal.Rptr. 783 (1986).

Nevertheless, defendant contends Dr. Gullick's testimony should have been admitted because "the admission of controversial scientific evidence is especially prevalent in cases of child sexual abuse." By way of example, she cites several cases where the use of anatomical dolls by a child witness has been approved and where opinion testimony on "syndromes" or "profiles" has been permitted. Defendant's argument is without merit. In allowing children to testify using anatomically correct dolls, both this Court and the North Carolina Supreme Court have not classified the dolls as scientific evidence and thus, they do not have to satisfy the reliability standard under the North Carolina Rules of Evidence as the plethysmograph does. Indeed, the North Carolina Supreme Court in *State v. Fletcher*, 322 N.C. 415, 368 S.E.2d 633 (1988), likened the use of dolls to "the use of photographs and other items to illustrate testimony." With regard to opinion testimony on syndromes or profiles thought to be consistent with sexual abuse, our appellate courts have found such testimony to be proper subject matter for expert testimony only after much scrutiny and sufficient recognition in the scientific community, and have imposed strict limitations on its use. *See State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992).

In the present case, plethysmograph testing formed the basis for Dr. Gullick's opinion that defendant was not sexually aroused by children, thereby making it less likely that he committed the acts charged. In view of the lack of general acceptance of the plethysmograph's validity and utility and therefore, its reliability for forensic purposes in the scientific community in which it is employed, we hold

that the trial court did not abuse its discretion in finding defendant's plethysmograph testing data insufficiently reliable to provide a basis for the opinion testimony which defendant sought to elicit from Dr. Gullick.

Moreover, for evidence to be admissible, it must be relevant. N.C. Gen. Stat. § 8C-1, Rule 402 (1992). "The test of relevancy of evidence is whether it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987), *quoting* N.C. Gen. Stat. § 8C-1, Rule 401 (1986). In view of the evidence before the trial court tending to show that a lack of penile response to sexual stimuli involving children is not probative of one's guilt or innocence of child sexual abuse, we question, without deciding, the relevance of Dr. Gullick's testimony, but agree with the trial court that any probative value it may have had was substantially outweighed by the risk that the testimony could mislead the jury, confuse the issues, and suggest a decision on an improper basis, i.e., the results of the test itself. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (1992); *Hall, supra; State v. Knox*, 78 N.C. App. 493, 337 S.E.2d 154 (1985). Thus, we hold that the trial court did not abuse its discretion in excluding Dr. Gullick's opinion testimony to the extent it was based on the results of the plethysmograph. This assignment of error is overruled.

## II.

Defendant subpoenaed certain records compiled by the Department of Social Services pertaining to K.B., which were reviewed *in camera* by the trial court. Portions of the DSS file had been previously provided to defendant's counsel; the trial court found that the remaining records contained no exculpatory information to which defendant was entitled. The records were sealed by order of the trial court and transmitted to this Court for our review. *See State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988). After careful review, we agree with the trial court that all of the records relevant to the case were made available to defendant, and that the remaining records contained no information material to his defense.

## III.

Defendant's final two assignments of error relate to the trial court's instructions to the jury. By assignment of error number thirteen, defendant contends the trial court's instruction with respect to

the elements of the offense of taking indecent liberties with a minor deprived him of a unanimous verdict because the jury was not required to agree unanimously as to which act, of a number of acts proscribed by G.S. § 14-202.1, was committed by defendant. The question has not been preserved for review by timely objection to the instruction, N.C.R. App. P. 10(b)(2), or by an assertion of "plain error," N.C.R. App. P. 10(c)(4). In any event, the issue has been decided adversely to defendant by our Supreme Court in *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990).

We have also carefully considered, and find no merit in, the contention advanced by defendant in his assignment of error number fourteen that the trial judge impermissibly expressed his opinion as to the sufficiency of the evidence to convict when he responded to a question by the jury. The trial court's response was a correct statement of the law and cannot reasonably be construed as an expression of opinion by the court.

Defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge ARNOLD and Judge WYNN concur.