[No. 38624-7-I.    Division One.    May 26, 1998.]

*In the Matter of the Marriage of* DELMAS GLENN PARKER, *Petitioner,* and SANDRA K. PARKER, *Respondent.*

*Delmas G. Parker*, pro se.
*Howard E. Richmond, Jr.*, for respondent.

BECKER, J. — A father who has never been convicted of a sex offense appeals from an order that he undergo a sexual deviancy evaluation that includes the use of a penile plethysmograph. The trial court, in the process of developing a parenting plan, issued the order in response to unresolved allegations that the father had sexually abused his son. Because there has been no demonstration that a plethysmograph is a reliable indicator of deviancy, we vacate the order. Due process requires a showing of reliability before the court may condition the father's exercise of his parental rights upon submission to an invasive and degrading procedure.

Delmas and Sandra Parker married in October, 1988. The couple immediately began having marital problems. They separated two months later. Their only child, Z, was born on September 17, 1989.

In May, 1992, Sandra and her parents reported to Child Protective Services (CPS) that, based on Z's statements, they suspected Delmas had sexually abused Z. When he learned of these allegations Delmas confronted Sandra and struck her. This led to his conviction for a misdemeanor assault. The record before us contains no evidence of any other convictions. CPS referred Z to Eastside Sexual Assault Center for Children in July, 1992, and the Center recommended that Delmas' visitations with Z be supervised. It does not appear that Delmas was charged with child abuse.

Delmas filed for dissolution in September, 1992. His effort to have his petition dismissed was the subject of a prior appeal, in which this court ruled that the dissolution

could not be dismissed without Sandra's consent.[1] After this decision, Sandra continued to pursue the dissolution. Z's visitations with Delmas have continued to be supervised.

In May, 1995, the trial court appointed a new guardian ad litem for Z. The guardian ad litem recommended that Delmas complete a sexual deviancy evaluation by Dr. Robert Wheeler. He based the recommendation on Delmas' "history of violence" and the "largely unexplored possibility of sexual boundary issues." The court ordered the evaluation.

Dr. Wheeler told Delmas the evaluation would include the use of a penile plethysmograph. A plethysmograph measures sexual arousal by means of an electronic recording device attached to the penis of the person being tested. The recording device monitors the subject's responses to the viewing of slides of naked women and children of various ages involved in various types of sexual activity.[2] Delmas made a motion and declaration for temporary order, asking the court, among other things, to prohibit the use of the plethysmograph. The trial court denied the motion.

Delmas refused to submit to the evaluation by Dr. Wheeler. His appeal challenges the trial court's authority to require him to submit to a penile plethysmograph in connection with a dispute over a parenting plan. He contends expert testimony interpreting a plethysmograph is not admissible under ER 702 because the procedure is not generally accepted in the mental health community as a reliable indicator of sexual deviancy. Delmas' argument is supported in the record by his psychologist, whose declaration states his opinion that the procedure is nonprofessional and scientifically unfounded.

As yet, no expert testimony has been offered and the trial court has made no determination as to admissibility of the plethysmography results. For this reason Sandra argues that the appeal should be dismissed as premature. However,

[1] *In re Marriage of Parker,* 78 Wn. App. 405, 897 P.2d 402 (1995).

[2] *In re Mark C.,* 7 Cal. App. 4th 433, 437, 8 Cal. Rptr. 2d 856 (1992).

Delmas also contends that his substantive due process rights are violated by the requirement that he submit to a plethysmograph. Although the order appealed from is not a final order, a commissioner of this court determined that the issue warrants review before Delmas is compelled either to undergo the procedure, or subject himself to contempt and continued restrictions on his visitation rights.

The Due Process Clause of the United States Constitution protects persons from deprivation of life, liberty, or property without due process of law.[3] Relying on *Rochin v. California*,[4] Parker contends the court's insistence on the use of a penile plethysmograph is conduct that violates his substantive due process rights because it "shocks the conscience". The criminal defendant in *Rochin* was observed to swallow some capsules upon being approached by the police. The police directed a hospital to pump his stomach, and the resulting evidence was used to convict him of narcotics possession. Reversing, the United States Supreme Court held that the conviction offended the Due Process Clause because the evidence had been obtained by methods "too close to the rack and the screw."[5]

█ Substantive due process claims are most often analyzed by weighing the individual rights asserted against the government's interest in intruding upon them.[6] Because we find this inquiry satisfactorily disposes of the present case, we need not consider whether, under *Rochin*, the order at issue "shocks the conscience."

█ Delmas asserts a substantive due process right to avoid having the intimate parts of his body restrained and

---

[3]U.S. Const. amends. 5, 14.

[4]*Rochin v. California*, 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 183 (1952).

[5]*Id.*

[6]*See, e.g., Reno v. Flores*, 507 U.S. 292, 301-02, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993); *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 531 (1st Cir. 1995).

monitored while his mind is exposed to pornographic imagery. This is a substantial claim. Freedom from bodily restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.[7] Also, the court-ordered plethysmograph test implicates the Fourth Amendment right to be free from unwarranted searches or seizures.[8] Finally, the order, which effectively makes submission to the test a precondition to unsupervised visitation, affects Delmas' fundamental liberty interest in the care and custody of his son.[9]

Weighed against the individual rights of Delmas is the court's obligation to consider a child's risk of physical, mental, or emotional harm in connection with the creation of a parenting plan.[10] A trial judge, faced with allegations of sexual abuse against one of the parties in a parenting dispute, must evaluate the allegations and has a legitimate need for information that will be of assistance in that task.

The First Circuit undertook a similar task of weighing the intrusiveness of the plethysmograph against the government's need for information in *Harrington v. Almy*.[11] In that case, a child accused many people of sexual abuse, eventually naming a police officer as one of the alleged perpetrators. Though no charges were brought against the officer, the officer's employer insisted that he submit to a psychological evaluation including a penile plethysmograph. His refusal to do so led to a demotion. He brought a civil rights suit alleging a substantive due process violation. The trial court dismissed his claim on summary judgment and the officer appealed.

The appellate court described the relevant inquiry as one of reasonableness: "Once it is established that, as

---

[7]*Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785, 118 L. Ed. 2d 437 (1992).

[8]*Harrington v. Almy*, 977 F.2d 37, 43 (1st Cir. 1992).

[9]*Zakrzewski v. Fox*, 87 F.3d 1011, 1013 (8th Cir. 1996).

[10]*See* RCW 26.09.002; RCW 26.09.184.

[11]*Harrington v. Almy*, 977 F.2d at 37.

here, the State is entitled to the information the bodily intrusion is designed to obtain, the means used will be measured by its reasonableness in light of the need to obtain the evidence in this way."[12] The court remanded the case for trial, holding that a reasonable trier of fact could find it was a violation of the officer's substantive due process rights to require a plethysmograph as a means of obtaining information about his sexual profile:

> The procedure involves bodily manipulation of the most intimate sort. There has been no showing regarding the procedure's reliability and, in light of other psychological evaluative tools available, there has been no demonstration that other less intrusive means of obtaining the relevant information are not sufficient.[13]

The same considerations arise in this case. If the penile plethysmograph is not a reliable indicator of sexual deviancy, it cannot serve the court's interest in determining whether unsupervised visitations with Delmas place his son at risk of sexual abuse.

The weight of authority from other jurisdictions overwhelmingly holds that the plethysmograph does not produce information on which a court can rely to decide that an individual is or is not sexually deviant.[14] This court has affirmed orders compelling plethysmograph testing for the purpose of monitoring compliance by convicted sex offenders with the conditions of their community placement.[15] But using a plethysmograph to monitor compliance with

---

[12]*Id.* at 44.

[13]*Id. Cf. Berthiaume v. Caron*, 142 F.3d 12 (1st Cir. 1998) (plethysmograph test of professional licensee was not, under the circumstances, so unreasonable as to establish a violation of "clearly established" law for purposes of piercing qualified immunity in a civil rights suit.).

[14]*See, e.g., Gentry v. State*, 213 Ga. App. 24, 443 S.E.2d 667 (1994); *State v. Spencer*, 119 N.C. App. 662, 459 S.E.2d 812 (1995); and *United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir. 1995).

[15]*State v. Riles*, 86 Wn. App. 10, 15, 936 P.2d 11 (1997), *review granted*, 133 Wn.2d 1009, 946 P.2d 402 (1997); *see also* WAC 246-930-310.

conditions of treatment or community placement is different from using it to determine sexual deviancy. And because convicted sex offenders are a population of individuals whose liberty interests have already been severely limited based on their proven criminal conduct, authority allowing courts to order the procedure in that context does not compel affirmance of an order directed to a person who has no history of committing sexual crimes.

Unless the proponent of the penile plethysmograph can demonstrate on remand that the testing is generally accepted in the relevant scientific community as a reliable measure of sexual deviancy,[16] the court may not order Delmas Parker to submit to the procedure. On remand, the proponent of plethysmograph testing may request a *Frye* hearing, and assume the burden of proving reliability.

The order is vacated and the case remanded for further proceedings.

KENNEDY, C.J., and COX, J., concur.

---

[16]*See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *State v. Copeland*, 130 Wn.2d 244, 261, 922 P.2d 1304 (1996); *State v. Hayden*, 90 Wn. App. 100, 950 P.2d 1024, 1026 (1998).