132 P.3d 714 (2006)
In re the Matter of the Detention of Michael Allen HALGREN, Petitioner.
No. 76161-2.
Supreme Court of Washington, En Banc.
Argued September 15, 2005.
Decided April 13, 2006.
*715 Nancy P. Collins, Washington Appellate Project, Seattle, for Petitioner/Appellant.
David J.W. Hackett, Brooke Elizabeth Burbank, Jeffrey C. Dernbach, Carla Barbieri Carlstrom, King County Prosecutors Office, Seattle, for Appellee/Respondent.
Brian William Elser, Miller Nash LLP, Seattle, for Amicus Curiae Washington Association for the Treatment of Sexual Abusers.
OWENS, J.
¶ 1 Pursuant to the sexually violent predators act (SVPA), chapter 71.09 RCW, the trial court ordered the involuntary commitment of petitioner Michael Halgren after a unanimous jury found beyond a reasonable doubt that Halgren was a sexually violent predator (SVP). Halgren appealed the commitment to Division One of the Court of Appeals, which affirmed the trial court in all respects. We accepted review of three issues addressed by Division One and hold that the trial court did not err in admitting Dr. Robert Wheeler's testimony or in declining to give Halgren's proposed unanimity instruction to the jury. Furthermore, because Halgren has not provided a record that the trial court actually ordered him to submit to a CR 35 mental examination, we decline to review whether such an order would have been erroneous. Accordingly, we affirm the Court of Appeals.

FACTS
¶ 2 Halgren was convicted of rape in 1989 and unlawful imprisonment in 1995. In the days before his release from prison, the State filed an SVP petition pursuant to RCW 71.09.030. The trial court found probable cause to believe that Halgren was an SVP and ordered him placed in custody pending a jury trial. In February 2002, a unanimous jury found that Halgren was an SVP beyond a reasonable doubt, and the trial court ordered that Halgren be committed.
¶ 3 Prior to trial, the State requested that Halgren submit to a mental examination by its psychological expert, Dr. Wheeler. Halgren initially agreed to submit to an examination to be conducted at the special commitment center (SCC) on August 29, 2001. Unfortunately, Dr. Wheeler required a medical procedure in mid-August and was unable to travel to the SCC for the scheduled examination. As a result, the State requested the examination be moved to Dr. Wheeler's office. The change in location would have required that the State transport Halgren in shackles and under guard. Halgren refused to submit to the change of location and refused to reschedule the examination because of the proximity of trial, which was originally set for November 2001.
¶ 4 The State responded with a motion to compel an examination pursuant to CR 35. *716 Halgren filed a brief in opposition to the CR 35 motion, arguing that the State failed to show "good cause" and that it was unduly burdensome and prejudicial for armed Department of Corrections personnel to transport him in shackles to the examination. In so arguing, Halgren cited favorably to the Court of Appeals opinion in In re Detention of Williams, 106 Wash.App. 85, 22 P.3d 283 (2001), rev'd, 147 Wash.2d 476, 55 P.3d 597 (2002), in which Division One held that there is nothing in the SVPA preventing additional discovery beyond that provided for in the statute. Id. at 95, 22 P.3d 283. The record provided by Halgren on appeal reveals no indication as to how the trial court ultimately resolved the State's motion to compel the CR 35 examination. The record only indicates that Halgren was ultimately subject to a mental examination and that Dr. Wheeler extensively relied on the results of the examination in his trial testimony.
¶ 5 At trial, Dr. Wheeler testified regarding his reliance on the results of Halgren's penile plethysmograph (PPG) examination under ER 703.[1] Dr. Wheeler first referred to the PPG examination results, obtained by another mental health evaluator during Halgren's prior incarceration and treatment, in support of his conclusion that Halgren was a sexual deviant. Dr. Wheeler went on to opine that the combination of Halgren's sexual deviancy and psychopathy made him more likely than not to reoffend. Halgren objected to the PPG examination testimony in a motion in limine and during trial on the grounds that it was prohibited by Frye,[2] ER 702, and ER 403. The trial court overruled Halgren's objections.
¶ 6 Dr. Wheeler also testified that Halgren suffered from at least one mental abnormality (paraphilia not otherwise specified (n.o.s.) nonconsent) and one personality disorder (antisocial personality disorder).[3] At the close of trial, Halgren requested a jury instruction that would have required unanimous agreement as to the specific mental abnormality or personality disorder necessary for involuntary commitment under RCW 71.09.020(16), which defines an SVP as one "who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." The trial court denied the request and, instead, instructed the jury as follows:
To establish that the Respondent Michael A. Halgren is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:
(1) That the Respondent has been convicted of a crime of sexual violence;
(2) That the Respondent currently suffers from a mental abnormality and/or a personality disorder making it difficult, if not impossible, for him to control his behavior; and
(3) That this mental abnormality and/or personality disorder make the Respondent likely to engage in predatory acts of sexual violence if not confined to a secure facility.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict that the Respondent is a sexually violent predator.
Clerk's Papers at 395 (Instruction 6).
¶ 7 A unanimous jury found that Halgren was an SVP, and the trial court ordered *717 Halgren committed. On October 10, 2002, while Halgren's appeal was pending, this court reversed Division One's Williams decision and held that chapter 71.09 RCW precludes the use of CR 35 and is the exclusive means for obtaining mental examinations in SVP proceedings. Williams, 147 Wash.2d at 491, 55 P.3d 597.
¶ 8 On appeal, Halgren relied on our Williams decision and assigned error to the alleged order of the trial court requiring him to submit to the CR 35 examination. Halgren argued that the trial court had no authority to order a CR 35 examination in September 2001 (over a year before our Williams opinion was published) because our interpretation of chapter 71.09 RCW is presumed to take effect from the inception of the statute. Division One disagreed. Reviewing for an abuse of discretion, the court stated that "the law at the time of the motion supported the State's motion" and held this sufficient to affirm the trial court. In re Det. of Halgren, 124 Wash.App. 206, 219, 98 P.3d 1206 (2004). Division One also affirmed Halgren's objections to Dr. Wheeler's testimony, id. at 224, 98 P.3d 1206, and the jury instruction, id. at 216, 98 P.3d 1206.

ISSUES
¶ 9 1. Should this court review the propriety of the CR 35 examination when Halgren has provided no record that the trial court actually ordered him to submit to the examination?
¶ 10 2. Did the trial court err in admitting Dr. Wheeler's testimony concerning the results of Halgren's PPG examination in discussing deviancy and recidivism?
¶ 11 3. Did the trial court err in declining to instruct the jury that it must be unanimous as to whether Halgren suffered from a "mental abnormality" or a "personality disorder" in order to find that Halgren was an SVP?

ANALYSIS
¶ 12 Standard of Review. Halgren contends that the trial court erred in ordering the CR 35 examination; in admitting Dr. Wheeler's opinion regarding the PPG examination evidence under Frye, ER 702, and ER 403; and in declining to give the proposed unanimity jury instruction. This court reviews discovery rulings, the admissibility of expert opinion under ER 702, and the trial court's balancing of probative value against prejudicial effect under ER 403 for an abuse of discretion. State v. Brown, 132 Wash.2d 529, 626, 940 P.2d 546 (1997) (discovery rulings); Philippides v. Bernard, 151 Wash.2d 376, 393, 88 P.3d 939 (2004) (ER 702); State v. Vreen, 143 Wash.2d 923, 932, 26 P.3d 236 (2001) (ER 403). We review the admissibility of scientific evidence under the Frye test and the propriety of jury instructions de novo. State v. Gore, 143 Wash.2d 288, 304, 21 P.3d 262 (2001) (the Frye test), overruled on other grounds by State v. Hughes, 154 Wash.2d 118, 131 n. 2, 110 P.3d 192 (2005); Thompson v. King Feed & Nutrition Serv., Inc., 153 Wash.2d 447, 453, 105 P.3d 378 (2005) (jury instructions).
¶ 13 The CR 35 Examination. In Williams, we held that chapter 71.09 RCW provides the exclusive means for obtaining mental examinations in SVP proceedings and precludes the use of CR 35. 147 Wash.2d at 491, 55 P.3d 597. In light of Williams, Halgren argues that the trial court committed reversible error when it ordered the CR 35 examination. Halgren relies on the following rule:
It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it. In other words, there is no "retroactive" effect of the court's construction of a statute; rather, once the court has determined the meaning, that is what the statute has meant since its enactment.

Johnson v. Morris, 87 Wash.2d 922, 927-28, 557 P.2d 1299 (1976) (citations omitted); accord State v. Roggenkamp, 153 Wash.2d 614, 629, 106 P.3d 196 (2005).
¶ 14 Applying the Johnson rule to the Williams decision, Halgren argues that the trial court never had the authority to order the CR 35 examination and the results were therefore inadmissible. In response to Halgren's *718 reliance on Williams, the State argues that (1) the CR 35 issue is not properly before this court; (2) the holding in Williams does not relate back to the date the SVPA was enacted; and (3) even if Williams does relate back, it was harmless error for the trial court to admit the results of the CR 35 examination. We agree that had the trial court ordered Halgren to submit to a CR 35 examination such an order would have been erroneous in light of our holding in Williams; however, Halgren has failed to meet his burden on appeal because he has failed to establish that the trial court actually ordered him to submit to a CR 35 examination.
¶ 15 As noted above, while the record includes a copy of the State's motion and Halgren's response, there is no written order or transcript of oral proceedings establishing that the trial court actually entered an order. Halgren concedes this point. Despite the absence of an order, Halgren suggests that we may infer from the circumstances that an order was entered. Halgren notes that the record is also devoid of any notation that the State withdrew its CR 35 motion and argues that this indicates that the trial court almost certainly ruled one way or another. We disagree, and believe that it is equally likely that Halgren withdrew his objection and voluntarily submitted to the examination.
¶ 16 We decline to review the merits of Halgren's CR 35 claim because Halgren has failed to satisfy his burden of providing an adequate appellate record. A party seeking appellate review is required to "serve on all other parties and file with the trial court clerk and the appellate court clerk a designation of those clerk's papers and exhibits the party wants the trial court clerk to transmit to the appellate court." RAP 9.6(a). The clerk's papers "shall include, at a minimum. . . any written order or ruling not attached to the notice of appeal, of which a party seeks review." RAP 9.6(b)(1)(C) (emphasis added). Thus, courts faced with inadequate appellate records have declined to review the issues not adequately covered in those records. For example, in City of Spokane v. Neff, 152 Wash.2d 85, 93 P.3d 158 (2004), the city sought review of the trial court's exclusion of evidence of prior prostitution related behavior under ER 404(b) as improper propensity evidence. Id. at 91, 93 P.3d 158. Finding "nothing in the record to establish the basis upon which the trial court ruled," the Neff court held that the city failed to meet its "burden of providing the record of the evidentiary hearing" and affirmed the evidentiary ruling. Id.; see also State v. Tracy, 128 Wash.App. 388, 394-95, 115 P.3d 381 (2005) (When an appellant fails to meet the burden of providing an adequate record, "the trial court's decision stands") (citing Story v. Shelter Bay Co., 52 Wash.App. 334, 345, 760 P.2d 368 (1988)), review granted, No. 77534-6 (Wash. Apr. 6, 2006); State v. Firven, 22 Wash.App. 703, 704-05, 591 P.2d 869 (1979) (RAP 9.6 requires "[t]he party seeking review of a lower court's ruling [to] designat[e] the necessary clerk's papers and exhibits.").
¶ 17 The dissent argues RAP 9.10 compels this court to review Halgren's CR 35 claim on the merits or allow him to supplement the record because "Halgren cannot be said not to have acted in good faith." Dissent at 724. We disagree. Halgren has made no effort, let alone a good faith effort, to provide the materials required by RAP 9.2(b) and RAP 9.6(b)(1)(C). Halgren did not include the CR 35 order of the trial court, if one exists, anywhere in the appellate record. Furthermore, Halgren has not moved to supplement the record pursuant to RAP 9.9 or RAP 9.10 or explain why there is no record of the CR 35 order. This court is unwilling to assign error to an order of a trial judge based on sheer speculation. Therefore, we hold that Halgren has failed to satisfy his burden on appeal regarding the CR 35 examination and decline to review whether such an order, if made, would constitute reversible error. Accordingly, we do not reach the State's remaining arguments relating to the CR 35 examination.
¶ 18 The PPG Examination Testimony. At trial, Dr. Wheeler testified that Halgren was a sexual deviant. In support of his opinion, Dr. Wheeler cited actuarial tests, interviews conducted by him and another psychologist, Dr. Stuart Brown, who treated Halgren while incarcerated, and the results of a PPG examination administered by Dr. *719 Brown during Halgren's treatment. Dr. Wheeler testified that Halgren's deviancy was illustrated in part by a PPG examination that showed that Halgren was twice as aroused by depictions of violent rape than by depictions of adults engaged in consensual sexual behavior. The PPG examination results were not formally admitted as evidence but were discussed by Dr. Wheeler under the limited scope of ER 703. Halgren objected to Dr. Wheeler's references to the PPG examination results under Frye, ER 702, and ER 403. The trial court overruled the objections and Division One affirmed.
¶ 19 Halgren first argues that the trial court erred in denying his request for a Frye hearing to determine whether the PPG examination results were admissible to show a likelihood of future sexually violent offenses. The Frye test allows a court to admit novel scientific evidence only if the evidence is generally accepted in the relevant scientific community. State v. Copeland, 130 Wash.2d 244, 255, 922 P.2d 1304 (1996). However, the Frye test is unnecessary if the evidence does not involve new methods of proof or new scientific principles. State v. Baity, 140 Wash.2d 1, 10-11, 991 P.2d 1151 (2000); State v. Ortiz, 119 Wash.2d 294, 311, 831 P.2d 1060 (1992).
¶ 20 The State argues, and Division One agreed, that Dr. Wheeler appropriately referenced the PPG examination results as one component among many in diagnosing Halgren as a sexual deviant (exhibiting paraphilia n.o.s. nonconsent). In State v. Riles, 135 Wash.2d 326, 957 P.2d 655 (1998), this court concluded that "[p]lethysmograph testing is regarded as an effective method for diagnosing and treating sex offenders." Id. at 343-44, 957 P.2d 655 (footnote omitted) (emphasis added). The Riles court cited extensively to psychiatric journals and cases from other jurisdictions in support of this conclusion. Id. at 343-44 nn. 57-59, 957 P.2d 655. Nevertheless, Halgren maintains that Dr. Wheeler used the PPG examination results to assess his risk of reoffending and such a use of the PPG examination is novel and not generally accepted.
¶ 21 This is a case in which a Frye examination was unnecessary. Halgren is correct that the PPG examination has not been accepted as, by itself, a predictor of recidivism. Dr. Wheeler acknowledged as much when he testified that there was only "limited evidence that phallometric, penile plethysmograph, assessments predict recidivism." Transcript of Proceedings (Feb. 14, 2002) at 39. Nonetheless, the State is correct that Dr. Wheeler merely used the PPG examination as part of his diagnostic process. While it is true that Dr. Wheeler ultimately concluded that Halgren's deviancy combined with his psychopathy make him more likely to reoffend, it is simply not the case that Dr. Wheeler suggested that the PPG examination results were directly related to recidivism. In Riles, this court expressly accepted the use of the PPG examination for purposes of diagnosis. Therefore, here, no new method of proof or scientific evidence was at issue.
¶ 22 Halgren also objected to discussion of the PPG examination under ER 702 and ER 403. The trial court considered and rejected these objections, finding that the PPG examination testimony could be helpful to the jury under ER 702 by assisting the jurors in understanding Dr. Wheeler's sexual deviancy diagnosis. The trial court also concluded that ER 403 did not preclude the use of the PPG examination testimony because any potential prejudice to Halgren was outweighed by the relevance of the evidence and because Halgren had an opportunity to attack the weight of this evidence through cross-examination. Halgren offers no reason to believe that these rulings were "`manifestly unreasonable or based on untenable grounds or untenable reasons.'" In re Marriage of Muhammad, 153 Wash.2d 795, 803, 108 P.3d 779 (2005) (quoting In re Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997)). Rather, Halgren's challenge centers on the reliability of the PPG examination. Because the issue of reliability goes to "the weight of the evidence rather than to its admissibility," In re Detention of Thorell, 149 Wash.2d 724, 755-56, 72 P.3d 708 (2003), the trial court did not abuse its discretion in allowing discussion of Halgren's PPG examination.
¶ 23 The Proposed Unanimity Instruction. Halgren contends that the trial court erroneously rejected his proposed unanimity jury *720 instruction. The proposed instruction would have required the jury to reach a unanimous agreement as to whether Halgren suffered from a mental abnormality or a personality disorder.
¶ 24 While SVP involuntary commitment proceedings are civil in nature, this court has held that a defendant in such proceedings is entitled to due process protections that include a unanimous jury verdict. In re Pers. Restraint of Young, 122 Wash.2d 1, 48, 857 P.2d 989 (1993).[4] Halgren reasons that the unanimity requirement in SVP trials, by implication, requires the use of rules developed to address unanimity concerns raised with regard to criminal statutes. Specifically, Halgren argues that the unanimity standard articulated in State v. Petrich, 101 Wash.2d 566, 683 P.2d 173 (1984), requires reversal in this case. In Petrich, we held that when several distinct criminal acts have been committed but the defendant is charged with only one count, "[t]he State may, in its discretion, elect the act upon which it will rely for conviction." Id. at 572, 683 P.2d 173. However, when the State chooses not to make such an election, we held that the trial court must instruct the jury that "all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt." Id.
¶ 25 Halgren maintains that a Petrich instruction was necessary in his case because "[t]he unanimity requirement in the [SVP] statute means the jury must unanimously agree as to whether the person being committed had a mental abnormality or personality disorder, at a minimum." Appellant's Opening Br. at 11. This argument relies on an analogy between cases involving multiple criminal acts supporting a single charge, as in Petrich, and SVP cases involving multiple mental illness diagnoses.
¶ 26 In response to Halgren's reliance on Petrich, the State offers two alternative arguments. First, the State suggests that the unanimity rules articulated in Petrich are inapplicable because the SVPA is a civil rather than criminal statute. The State notes that unlike criminal prosecutions, it is not tasked with proving the defendant engaged in a particular act to establish the defendant has a mental illness under the SVP definition. Rather, the State argues that it must only prove that the defendant has a mental illness described in RCW 71.09.020(16) as a "mental abnormality or personality disorder." Thus, because the SVP cases do not involve a series of acts equivalent to the months of sexual misconduct described in Petrich, the State contends that the criminal law unanimity requirements are inapplicable.
¶ 27 The State's contention that the criminal law unanimity cases are inapplicable is unpersuasive. While differences exist in terms of proving underlying acts versus the defendant's mental status, in both criminal and SVP cases the jury is asked to find the existence of some fact as a component of placing the defendant in confinement. Moreover, in both cases the jury is operating under a constitutionally prescribed unanimity requirement. Given that the ultimate due process concern is in ensuring that the jury unanimously agrees on the basis for confinement, we hold that unanimity rules are applicable in SVP cases.
¶ 28 Second, the State argues that even if unanimity requirements apply, in the present case we should apply the alternative means analysis articulated in State v. Arndt, 87 Wash.2d 374, 553 P.2d 1328 (1976). The State reasons that SVP cases are far more analogous to the alternative means cases such as Arndt than the multiple acts scenario in Petrich because "mental abnormality" and "personality disorder" are alternative means of establishing the broader proposition that the defendant is an SVP.
¶ 29 Alternative means statutes identify a single crime and provide more than one means of committing the crime. Id. at 376-77, 553 P.2d 1328. In Arndt, this court first clearly adopted the rule that when there is a single offense committable in more than one way "it is unnecessary to a guilty verdict that there be more than unanimity concerning *721 guilt as to the single crime charged . . . regardless of unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged." Id. at 377, 553 P.2d 1328.
¶ 30 Legislative intent determines whether this court should analyze a statute under the alternative means framework. Id. at 378, 553 P.2d 1328. In Arndt and State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997), we determined legislative intent by considering "(1) the title of the act; (2) whether there is a readily perceivable connection between the various acts set forth; (3) whether the acts are consistent with and not repugnant to each other; and (4) whether the acts may inhere in the same transaction." Berlin, 133 Wash.2d at 553, 947 P.2d 700 (citing Arndt, 87 Wash.2d at 379, 553 P.2d 1328). Applying these factors, the Berlin court held that second degree murder was an alternative means crime. Id. In reaching this conclusion, it considered the fact that both means for committing second degree murderintentional murder under RCW 9A.32.050(1)(a) and felony murder under RCW 9A.32.050(1)(b)existed under the same title of "Murder in the Second Degree." Id. In addition, the Berlin court noted that "`[t]he readily perceivable connection between the acts set forth is a common object: causing the death of another person'" and that "`proof of an offense under one subsection does not disprove an offense under the other subsection.'" Id. (quoting State v. Russell, 33 Wash.App. 579, 586, 657 P.2d 338 (1983), rev'd on other grounds, 101 Wash.2d 349, 678 P.2d 332 (1984)). Finally, the Berlin court noted that "`[t]he prohibited acts may inhere in the same transaction'" since one may simultaneously satisfy the elements of felony murder and intentional murder. Id.
¶ 31 The factors considered in Arndt and Berlin dictate that "mental abnormality" and "personality disorder" are alternative means for making the SVP determination. As in Berlin, in this case, a single statutory provision, RCW 71.09.020(16), contains both bases for determining whether a person is an SVP. In addition, because the result to be accomplished whether one has a mental abnormality or a personality disorder is the same, commitment as an SVP, and because both mental illnesses are predicates for the SVP determination, the two mental illnesses are closely connected. See Arndt, 87 Wash.2d at 382, 553 P.2d 1328. Also, as Dr. Wheeler opined, these two means of establishing that a person is an SVP may operate independently or may work in conjunction. Thus, because an SVP may suffer from both defects simultaneously, the mental illnesses are not repugnant to each other and may inhere in the same transaction.
¶ 32 Considering the Arndt factors, we conclude that the terms "mental abnormality" and "personality disorder" are two distinct means of establishing the mental illness element in SVP cases. These terms are two factual alternatives provided by statute, not a series of uncharged criminal acts presented to a jury that must decide whether the defendant is guilty of an individual count or counts, as was at issue in Petrich.
¶ 33 Applying the Arndt alternative means test, we hold that there is substantial evidence to support the jury's finding that Halgren was an SVP beyond a reasonable doubt. The substantial evidence test is satisfied if this court is convinced that "a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." State v. Kitchen, 110 Wash.2d 403, 410-11, 756 P.2d 105 (1988). In reviewing a record for substantial evidence, this court will not second guess the credibility determinations of the jury. E.g., State v. Jeannotte, 133 Wash.2d 847, 853, 947 P.2d 1192 (1997).
¶ 34 The evidence presented by the State was sufficient for a reasonable jury to conclude that Halgren had both a mental abnormality and a personality disorder beyond a reasonable doubt. The jury heard extensive testimony from Dr. Wheeler regarding his belief that Halgren had the mental abnormality known as paraphilia n.o.s. nonconsent. Specifically, Dr. Wheeler described the results of actuarial tests, hours of interviews conducted over the course of more than a decade, and the results of the PPG examination. Halgren's former psychologist, Dr. Brown, also testified for the State regarding Halgren's PPG examination, paraphilia, *722 and prior psychological condition. Moreover, the jury had evidence of Halgren's prior criminal history, including a previous rape conviction and his admission of involvement in approximately 20 sexual assault incidents. In addition, based on Halgren's behavior, testing, and interviews, Dr. Wheeler testified that Halgren had an antisocial personality disorder. While Halgren's expert provided testimony contrary to that of Dr. Wheeler's, the jury was entitled to give more weight to the State expert's testimony than to the testimony of Halgren's expert. Accordingly, because there was substantial evidence to justify a finding that Halgren had both a mental abnormality and a personality disorder beyond a reasonable doubt, the trial court did not violate Halgren's constitutional right to unanimity by failing to instruct the jury that it must reach unanimous agreement as to which condition satisfied RCW 71.09.020(16).

CONCLUSION
¶ 35 We decline to review the merits of Halgren's challenge to the CR 35 examination because Halgren has failed to satisfy his burden of providing this court with a record of the trial court's alleged CR 35 order. After reviewing the merits of Halgren's other assignments of error, we hold that the trial court correctly declined to conduct a Frye hearing because it is not novel for PPG examinations to be used for diagnosis purposes. In addition, we hold that Halgren has failed to demonstrate that the trial court abused its discretion in overruling Halgren's ER 702 and ER 403 objections to the PPG examination testimony. Finally, we hold that the trial court did not violate Halgren's right to a unanimous jury verdict because, under the alternative means test, there was substantial evidence that Halgren had both a "mental abnormality" and a "personality disorder." Accordingly, we affirm the Court of Appeals.
Concurring: ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, FAIRHURST and J.M. JOHNSON, JJ.
SANDERS, J. (dissenting).
¶ 36 The State is prohibited from administering CR 35 mental examinations in the course of involuntary commitment proceedings under chapter 71.09 RCW. In re Det. of Williams, 147 Wash.2d 476, 491, 55 P.3d 597 (2002). However the centerpiece of the State's case against Michael Halgren was the results of a CR 35 mental examination administered over his objections by the State's expert witness, Dr. Robert Wheeler, while Halgren remained in custody. The majority declines to consider Halgren's CR 35 claim and, instead, adopts a theory advanced by the State for the first time before this courtnamely, that the trial court never ruled on the State's motion to compel a CR 35 mental examination and that Halgren submitted to the examination voluntarily despite his prior objections. I dissent.

I. BACKGROUND
¶ 37 In March 1999, shortly before Michael Halgren was scheduled for release from prison for a 1995 conviction for unlawful imprisonment, the State filed a petition pursuant to chapter 71.09 RCW, seeking his civil commitment as a sexually violent predator (SVP). To avoid testifying at the probable cause hearing, Halgren stipulated probable cause existed to believe he was an SVP, and the trial court remanded Halgren to the custody of the Department of Social and Health Services until his trial in accordance with RCW 71.09.040(4) on August 17, 2000. The State requested a CR 35 examination, and Halgren initially agreed.[1] The examination scheduled for August 29, 2001 at the special commitment center (SCC) where Halgren was held did not take place, however, because the State's expert, Dr. Wheeler, had to undergo surgery.[2] Because Dr. Wheeler's condition precluded travel to the SCC, the State requested *723 the examination be moved to his office or postponed.[3] Halgren objected, citing concerns regarding being transported shackled and chained under armed guard and because any delay in the examination would leave insufficient time for his expert to evaluate Dr. Wheeler's report prior to the trial, scheduled to begin in November 2001.[4] The State responded by filing a motion on September 5, 2001 for a CR 35 evaluation. Halgren filed a brief in opposition to the State's motion to compel the examination, arguing the State failed to establish good cause for the examination and that any exam administered in such close proximity to the trial would undermine his right to effective representation of counsel by depriving his experts of sufficient time to review Dr. Wheeler's report.
¶ 38 The record before us does not contain the trial court's ruling on the State's motion or any evidence either that the motion itself or Halgren's opposition was withdrawn. It is undisputed, however, that Halgren was subjected to a CR 35 exam by Dr. Wheeler on December 18 and 20, 2001.[5] Following trial in February 2002, which featured extensive testimony by Dr. Wheeler regarding the results of the CR 35 examination,[6] the jury found Halgren was an SVP. The trial court remanded him to the custody of the Department of Social and Health Services. While Halgren's appeal was pending we issued our decision in Williams holding the State was not entitled to administer CR 35 examinations in the course of civil commitment proceedings under chapter 71.09 RCW. Williams, 147 Wash.2d at 491, 55 P.3d 597.
¶ 39 Subsequently, Division One of the Court of Appeals affirmed Halgren's commitment. In re Det. of Halgren, 124 Wash.App. 206, 98 P.3d 1206 (2004). Rejecting Halgren's CR 35 claim, the Court of Appeals assumed the trial court had entered an order granting the State's motion to compel[7] but found no abuse of discretion because "the law at the time of the motion supported the State's motion." Halgren, 124 Wash.App. at 219, 98 P.3d 1206. Halgren appeals.

II. ANALYSIS
¶ 40 We review the discovery rulings of the trial court for abuse of discretion. Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 778, 819 P.2d 370 (1991). An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). As discussed above, the State is not entitled to CR 35 examinations in civil commitment proceedings under chapter 71.09 RCW. Williams, 147 Wash.2d at 491, 55 P.3d 597. Although we did not decide Williams until after the conclusion of Halgren's trial, our interpretation of a statute relates back to its enactment. As we have explained:
It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it. In other words, there is no "retroactive" effect of the court's construction of a statute; rather, once the court has determined the meaning, that is what the statute has meant since its enactment.

Johnson v. Morris, 87 Wash.2d 922, 927-28, 557 P.2d 1299 (1976) (citations omitted).
¶ 41 Therefore, contrary to the opinion of the Court of Appeals, the law at the time of the State's motion to compel did not support the State's position because the trial court lacked discretion to order Halgren to undergo a CR 35 examination. The majority concedes this point. Majority at 718 ("had the trial court ordered Halgren to submit to a CR 35 examination such an order would have *724 been erroneous in light of our holding in Williams"). However, the majority then holds Halgren has failed to establish the trial court ordered him to undergo a CR 35 examination, stating "it is equally likely that Halgren withdrew his objection and voluntarily submitted to the examination." Majority at 718. This conclusion strains credulity. Once the Court of Appeals in Williams cast doubt on the State's ability to compel CR 35 examinations, Halgren refused to consent to one, filed a brief opposing the State's motion to compel, and filed a supplemental brief assigning error to the trial court's order 19 days after we decided Williams. There is no evidence the State withdrew its motion or that Halgren withdrew his objection. Furthermore, despite Halgren's assignment of error to the trial court's order before the Court of Appeals, the State did not challenge the order's existence at the Court of Appeals or in its response to the petition for review. In short, the overwhelming weight of the evidence supports the Court of Appeals' determination the trial court did order Halgren to undergo a CR 35 examination.
¶ 42 The majority refuses to consider Halgren's CR 35 claim because he has failed to provide adequate record on appeal. While the parties dispute whether the trial court ruled on the State's motion to compel the CR 35 examination, both agree the trial court file does not contain an order.[8] Contrary to the State's assertion this necessitates the dismissal of the CR 35 claim, the rules of appellate procedure do not favor affirming lower courts solely because the record is incomplete:
If a party has made a good faith effort to provide those portions of the record required by rule 9.2(b), the appellate court will not ordinarily dismiss a review proceeding or affirm, reverse, or modify a trial court decision ... because of the failure of the party to provide the appellate court with a complete record of the proceedings below.
RAP 9,10.
¶ 43 Considering the State did not challenge the existence of the trial court's order until it filed its supplemental brief, and that the court file does not contain a copy of the trial court's order, Halgren cannot be said not to have acted in good faith. Consistent with the mandates that the rules are to be "liberally interpreted to promote justice and facilitate the decision of cases on the merits," RAP 1.2(a) (emphasis added), and that "[c]ases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands," id., the proper course of action if the Court of Appeals' assumption that an order was issued is found erroneous would be to exercise our discretion under RAP 9.10 and direct the transmittal of additional records by the trial court.
¶ 44 In addition to maintaining the trial court never acted on its motion to compel a CR 35 examination, the State alternatively argues we should not consider this issue because (1) it is moot, (2) Halgren failed to preserve any error, and (3) the error was harmless. I will address these contentions in turn.
¶ 45 The State asserts that "[f]ederal case law holds that a complied-with discovery order cannot be appealed because it is moot."[9] However, the State fails to explain why federal law should govern the mootness question or to cite any authority supporting such an approach. "A case is moot if a court can no longer provide effective relief." In re Det. of Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983). We are in position to provide Halgren effective relief by reversing the Court of Appeals and remanding for retrial excluding any testimony based on Dr. Wheeler's examination. The mootness doctrine does not bar our review of Halgren's claim.
¶ 46 The State next argues Halgren failed to preserve any error by not objecting to the admissibility of Dr. Wheeler's testimony. Ordinarily, failure to timely object waives the claim on appeal. State v. Wicke, 91 Wash.2d 638, 642, 591 P.2d 452 (1979). In the instant case however because the decision constituting *725 the basis objecting to the admissibility of the results of a CR 35 examination had not yet been issued, Halgren's claim is not waived. See State v. Leavitt, 49 Wash.App. 348, 357, 743 P.2d 270 (1987) ("An objection must be made as soon as the basis of the objection becomes known and at a time when the trial judge may act to correct the error." (Emphasis added.)).
¶ 47 Finally, the State asserts any error which may have resulted from the CR 35 examination was harmless. Drawing an analogy to the "independent source" and "inevitable discovery" doctrines in criminal law, the State contends the information gained by Dr. Wheeler during the examination was available to the State through alternative means of discovery: depositions, interrogatories, and requests for admissions and production of documents.
¶ 48 The inevitable discovery exception to the exclusionary rule applies if the State can prove "by a preponderance of the evidence that the evidence ultimately or inevitably would have been discovered using lawful procedures." State v. O'Neill, 148 Wash.2d 564, 591, 62 P.3d 489 (2003) (citing Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The State has failed to do so here. Citing to the existence of additional discovery tools does not satisfy the State's burden of proving the information gained by Dr. Wheeler would have been discovered irrespective of the CR 35 examination. This point is further underscored by the fact that despite a substantial delay in administering the CR 35 examination, the State did not seek to employ any of the other methods it now maintains would result in the discovery of identical information by Dr. Wheeler.

III. CONCLUSION
¶ 49 It is undisputed the State filed a motion to compel Halgren to submit to a CR 35 examination over Halgren's repeated objections. It is undisputed the examination was administered on December 18 and 20, 2001 by Dr. Wheeler, the State's only expert witness, and its results constituted the centerpiece of his testimony at the trial. It is also undisputed an order to compel a CR 35 examination in the context of SVP civil commitment proceedings under chapter 71.09 RCW constitutes abuse of discretion. I would reverse the Court of Appeals on Halgren's CR 35 claim, and vacate the confinement order with instructions to exclude any evidence stemming from the CR 35 examination on remand. In the alternative I would direct the transmittal of additional records pursuant to RAP 9.10.
¶ 50 I therefore dissent.
NOTES
[1] A PPG exam is a test that "measures sexual arousal by means of an electronic recording device attached to the penis of the person being tested. The recording device monitors the subject's responses to the viewing of slides of naked women and children of various ages involved in various types of sexual activity." In re Marriage of Parker, 91 Wash.App. 219, 222, 957 P.2d 256 (1998).
[2] Under Frye v. United States, 293 F. 1013 (D.C.Cir.1923), expert testimony is only admissible if it is generally accepted in the relevant scientific community. Frye was implicitly adopted by this court for the first time in State v. Woo, 84 Wash.2d 472, 527 P.2d 271 (1974).
[3] Dr. Wheeler described "paraphilia" as the "definitional word for a type of sexual deviance which involves repetitive, intense sexual urges, fantasies, or behaviors involving children, objects, or nonconsenting persons." Transcript of Proceedings (Feb. 13, 2002) at 55. He further described Halgren's "antisocial personality disorder" as "a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years." Id. at 76.
[4] The SVPA has since been amended to explicitly require a unanimous verdict. RCW 71.09.060(1).
[1] Clerk's Papers (CP) at 651. We did not issue our decision in In re Detention of Williams, 147 Wash.2d 476, 55 P.3d 597, clarifying the parameters of discovery under chapter 71.09 RCW until October 10, 2002.
[2] Id. at 649, 55 P.3d 597.
[3] Id.
[4] Id. at 651, 55 P.3d 597.
[5] Report of Proceedings (RP) (Feb. 13, 2002) at 18.
[6] Id. at 16-88.
[7] Halgren, 124 Wash.App. at 210-11, 98 P.3d 1206 ("Prior to trial, and over Halgren's objection, the trial court granted the State's motion for a CR 35 mental examination in September 2001."). This assumption was undoubtedly reinforced by the fact the State's brief did not challenge the existence of the trial court's order compelling a CR 35 examination. See State's Resp. to Appellant's Opening & Suppl. Br.
[8] See Suppl. Br. of Pet'r at 8; State's Suppl. Br. at 1.
[9] Suppl. Br. of Resp't at 3.