IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | |
| | ) | No. 39369-1-III |
| JUSTIN J. MACKEY, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |

COONEY, J. — In 2021, the State of Washington petitioned to have Justin Mackey civilly committed as a sexually violent predator (SVP). At trial, the State and Mr. Mackey, through their respective expert witnesses, introduced testimony about the Static-99R, an assessment tool used to calculate an offender's risk of recidivism. The Static-99R assigns an extra point to male offenders who have male victims. Ultimately, the jury found beyond a reasonable doubt that Mr. Mackey met the definition of an SVP and he was civilly committed.

Mr. Mackey appeals arguing: (1) that because the jury was not provided a unanimity instruction, substantial evidence must support both means of being qualified as an SVP and there is insufficient evidence to show that Mr. Mackey has a personality disorder that makes him likely to reoffend; (2) that the State's use of the Static-99R, through its expert witness, violated his equal protection rights under the federal constitution and the privileges and immunities clause of the Washington Constitution;

and (3) that the State's attorney committed prejudicial misconduct during closing argument.

We conclude sufficient evidence was presented to support both means of being qualified as an SVP, that Mr. Mackey's constitutional challenge to the Static-99R was inadequately preserved for our review, and that the State's attorney did not commit prejudicial misconduct during closing argument. Accordingly, we affirm.

BACKGROUND

Mr. Mackey has a history of sex offenses against children. His earliest victims were his half-sister and half-brother who Mr. Mackey began raping when he was 12 years old. In 1993, Mr. Mackey was convicted of three counts of rape of a child and child molestation for the offenses against his half-siblings and sentenced to 16 to 18 months in a juvenile facility. In 2002, Mr. Mackey, then 21 years old, orally raped an intoxicated high school student while he was working as a taxicab driver. From this event, Mr. Mackey later plead guilty to child molestation.

In 2008, Mr. Mackey was found to be an SVP and was civilly committed. By 2018, Mr. Mackey had sufficiently progressed in sex offender treatment to be granted conditional release to a less restrictive alternative (LRA) housing placement. Less than a year later, Mr. Mackey's LRA was revoked due to violations of his LRA conditions.

In 2021, the State petitioned to have Mr. Mackey civilly committed as an SVP pursuant to chapter 71.09 RCW. At trial, Whitney Van Vleet, a psychology associate at the Special Commitment Center on McNeil Island and one of Mr. Mackey's treatment providers from his previous commitment, testified for the State about troubling behavior exhibited by Mr. Mackey while committed. She also testified that Mr. Mackey told her she reminded him of the half-sister he had raped when he was 12 years old.

Brian Judd, Ph.D., a forensic psychologist, also testified for the State. Dr. Judd testified about Mr. Mackey's history of sex offenses, his participation in treatment, and about his time in the community while he was conditionally released on an LRA. Dr. Judd testified that Mr. Mackey demonstrated "insight into his behaviors" and his writings demonstrate that "he has improved," yet Dr. Judd "didn't see that there had been any real changes . . . didn't see that there'd been any real sustaining . . . changes that he had sustained for long periods of time." Rep. of Proc. (RP) at 487.

Dr. Judd diagnosed Mr. Mackey with specified paraphilic disorder with pedophilic and hebephilic traits, exhibitionistic disorder, and voyeuristic disorder. He testified that the pedophilic traits referred to someone "interested in prepubescent kids" and that Mr. Mackey acknowledged that in the past he had "sexual interest in children." *Id.* at 403-04. Dr. Judd defined hebephilic traits as a person who has an interest in one transitioning into sexual maturity who "are underage from the standpoint of consent." *Id.* at 404.

Dr. Judd also diagnosed Mr. Mackey with antisocial personality disorder with narcissistic and histrionic traits. Dr. Judd opined that Mr. Mackey's antisocial personality disorder made it difficult for him to control his inappropriate sexual urges. According to Dr. Judd, the manifestation of Mr. Mackey's antisocial personality disorder is revealed through Mr. Mackey's "failure to conform to social norms with respect to lawful behaviors," deceitfulness, "reckless disregard for the safety of self or others," lack of remorse, and impulsivity. *Id*. at 424-25. In response to the State inquiring, "[H]ow does this additional diagnosis of antisocial personality disorder affect your overall opinions[?]" Dr. Judd testified:

> The antisocial personality disorder, I've characterized it like the backdrop of a play for instance. In other words, where the actor is there on the stage, but then you've got this backdrop. And, you know, if you're lacking remorse. If you're impulsive. If you don't have—you're lacking empathy for other individuals, then the mechanisms if you will, they [sic] ways that you would inhibit and say hey, I'm not gonna do that. That's not a good thing to do. That's gonna hurt somebody. If you have antisocial personality disorder, those mechanisms where you put the brakes on these urges or behaviors isn't really going to be as strong as if you didn't have it, or maybe non-existent. And so, the individual will sort of open up the gates, if you will, for the individual to begin to act upon those urges. And so, while I don't see that as being specific to the mental abnormality itself or to, you know, what I'm—the way that I'm thinking about this case, it is something that's relevant because we can't simply compartmentalize urges over here and then the emotional traits that the individual has, the personality traits over here and say that they don't interact. They do. For somebody that didn't have antisocial personality disorder, there's a greater probability that they're gonna put the brakes on, rather than act on the urges.

*Id*. at 427-28. Dr. Judd opined that Mr. Mackey's mental abnormalities cause him serious difficulty in controlling his sexually violent behavior and that he is likely to engage in predatory acts of sexual violence if not confined.

In assessing Mr. Mackey's risk of recidivism, Dr. Judd testified he utilized the Static-99R. The Static-99R is a tool used in assessing male offenders' risk of recidivism. Dr. Judd stated that "the more points you have [on the test], the worse it is. So, the higher the likelihood that you're gonna reoffend." *Id*. at 445. Dr. Judd also testified that according to the test, having male victims puts an offender at a higher risk of reoffense. Thus, the Static-99R assigns those offenders who have male victims an extra point.

Mr. Mackey's expert, Joseph Plaud, Ph.D., also testified that he utilized the Static-99R to assess Mr. Mackey's risk of reoffense. He stated the Static-99R "is the most, by far, the most utilized actuarial tool that evaluators [a]cross a number of areas in my work and otherwise use, it's the No. 1—it's the most prevalently used actuarial tool." *Id*. at 720. Dr. Plaud scored Mr. Mackey a seven on the test while Dr. Judd scored Mr. Mackey a six. Dr. Plaud testified he did not believe Mr. Mackey had a mental abnormality or personality disorder that would make him likely to reoffend.

At the conclusion of evidence, the court read to the jury its instructions on the law. Mr. Mackey proposed, and the court read to the jury:

5

INSTRUCTION NO. 3

To establish that Justin Mackey is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:

(1) Justin Mackey currently suffers from a mental abnormality or personality disorder which causes him serious difficulty controlling his sexually violent behavior; and

(2) The mental abnormality or personality disorder currently makes respondent likely to commit predatory acts of sexual violence unless confined to a secure facility.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict that respondent currently is a sexually violent predator.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any of one or more of these elements, then it will be your duty to return a verdict that the respondent is not a sexually violent predator.

Clerk's Papers (CP) at 26; RP at 929-30. The court also instructed the jury that:

The comments of the lawyers during this trial are intended to help you understand the evidence and apply the law. However, it is important for you to remember that the lawyers' remarks, statements and arguments are not evidence. You should disregard any remark, statement or argument that is not supported by the evidence or the law as I have explained it to you.

CP at 23; RP at 927.

During closing argument, the State's attorney told the jury that "Dr. Judd was actually supportive of Justin Mackey's LRA in 2018, and he wrote an evaluation stating the same." RP at 957. The State's attorney also drew attention to the fact that Mr. Mackey told Ms. Van Vleet that she reminded him of his sister. Mr. Mackey's attorney

6

responded during closing argument that Mr. Mackey's statement to Ms. Van Vleet was not made to "suggest she should be a victim" but was instead said during an "angry" and "elevated" conversation. *Id*. at 969. Then, in rebuttal, the State's attorney again addressed Mr. Mackey's comment to Ms. Van Vleet and stated, "This I think is direct evidence of a paraphilic disorder that's still controlling Mr. Mackey's behavior." *Id*. at 995.

The jury ultimately found beyond a reasonable doubt that the State proved Mr. Mackey meets the definition of an SVP. Mr. Mackey appeals.

## ANALYSIS

### WHETHER SUBSTANTIAL EVIDENCE SUPPORTS BOTH MEANS FOR WHICH MR. MACKEY COULD QUALIFY AS AN SVP

Mr. Mackey argues that his due process rights were violated because the trial court did not provide the jury with an unanimity instruction and there was insufficient evidence to prove his personality disorder made him likely to commit future predatory acts of sexual violence. Mr. Mackey does not contest that the State presented substantial evidence to support the mental abnormality means, he contests only the personality disorder means. As explained below, the State presented substantial evidence to support the challenged means.

"We review jury instructions de novo." *In re Det. of Monroe*, 198 Wn. App. 196, 202, 392 P.3d 1088 (2017) (citing *State v. Clausing*, 147 Wn.2d 620, 626-27, 56 P.3d 550

(2002)). Jury instructions are sufficient when "they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." *State v. Irons*, 101 Wn. App. 544, 549, 4 P.3d 174 (2000). It is prejudicial error to submit an issue to the jury that is not supported by the evidence. *Clausing*, 147 Wn.2d at 627.

For purposes of making an SVP determination, "mental abnormality" and "personality disorder" are alternative means. *In re Det. of Halgren*, 156 Wn.2d 795, 810, 132 P.3d 714 (2006) (internal quotation marks omitted). In SVP cases, the jury should be instructed "that it must unanimously agree as to whether either of the two alternative means, mental abnormality or personality disorder, were proved beyond a reasonable doubt." *In re Det. of Pouncy*, 144 Wn. App. 609, 619-20, 184 P.3d 651 (2008). However, in the absence of an unanimity instruction or when the record does not show on which means the jury unanimously agreed, there must be substantial evidence in the record supporting both means. *Halgren*, 156 Wn.2d at 809. "The substantial evidence test is satisfied if this court is convinced that 'a rational trier of fact *could* have found each means of [satisfying the SVP requirements] proved beyond a reasonable doubt.'" *Id.* at 811 (quoting *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988)).

Here, because it is undisputed that no unanimity instruction was provided to the jury, there must be "substantial evidence showing the presence of the mental abnormality

8

and personality disorder and that each one alone makes reoffense likely." *Monroe*, 198 Wn. App. at 203.

As a threshold issue, the State contends that because Mr. Mackey proposed jury instruction 3, he is precluded from arguing on appeal that an unanimity instruction should have been given. "The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). In determining whether the invited error doctrine is applicable, we consider "whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it." *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014).

Mr. Mackey is not arguing that jury instruction 3, which he proposed, was erroneous. Rather, he argues that an unanimity instruction *also* should have been given to the jury. Mr. Mackey did not contribute to the absence of an unanimity instruction by, for example, arguing against its inclusion. The invited error doctrine is inapplicable under these circumstances.

Proceeding to the merits, the State presented substantial evidence to show that Mr. Mackey's personality disorder makes reoffense likely. The State's expert, Dr. Judd, testified that Mr. Mackey suffers from other specified paraphilic disorder with pedophilic and hebephilic traits, antisocial personality disorder with narcissistic and histrionic traits,

exhibitionistic disorder, and voyeuristic disorder. Dr. Judd testified that Mr. Mackey's paraphilic disorder with pedophilic traits made Mr. Mackey "interested in prepubescent kids." RP at 403. He explained that Mr. Mackey acknowledged "he had interest, sexual interest in children." *Id*. at 404.

Dr. Judd's testimony demonstrated that Mr. Mackey's personality disorder, namely, his antisocial personality disorder, makes him likely to reoffend. This was evidenced through Mr. Mackey's "failure to conform to social norms with respect to lawful behaviors," deceitfulness, "reckless disregard for the safety of self or others," lack of remorse, and impulsivity. *Id*. at 424-25. A combination of these characteristics, according to Dr. Judd, made it difficult for Mr. Mackey to control his inappropriate sexual urges.

Our Supreme Court recognized that an offender's mental abnormality and personality disorder may "operate independently or may work in conjunction. Thus, because an SVP may suffer from both defects simultaneously, the mental illnesses are not repugnant to each other and may inhere in the same transaction." *Halgren*, 156 Wn.2d at 810. Similarly, here, Dr. Judd opined that one with antisocial personality disorder could not "simply compartmentalize urges over here and then the emotional traits that the individual has, the personality traits over here and say they don't interact. They do." RP at 428. Dr. Judd testified that Mr. Mackey's antisocial personality disorder made it

difficult for him to "put the brakes on th[o]se [sexual] urges" and instead made him more likely to "act upon those urges." *Id.* Dr. Judd explained that somebody who did not have antisocial personality disorder would be more likely to "put the brakes on, rather than act on the urges." *Id.*

Given Dr. Judd's testimony, a rational trier of fact could have found that Mr. Mackey's personality disorder makes him likely to commit predatory acts of sexual violence unless confined to a secure facility. Because there was substantial evidence to justify a finding that Mr. Mackey had both a mental abnormality and a personality disorder, the trial court did not violate his constitutional right to unanimity by failing to instruct the jury that it must reach unanimous agreement as to which means satisfied RCW 71.09.020(19).

WHETHER USE OF THE STATIC-99R VIOLATED MR. MACKEY'S EQUAL
PROTECTION RIGHTS

Mr. Mackey argues that the State's expert's use of the Static-99R was unconstitutional as applied to him because offenders who have offended against male victims are scored higher. Mr. Mackey claims the Static-99R therefore assigns gay men, such as himself, a higher risk of recidivism than heterosexual men. Mr. Mackey claims a violation of the Fourteenth Amendment to the United States Constitution and a violation of Washington's privileges and immunities clause. The State argues that we should refrain from addressing this argument because it was not raised before the trial court. *See*

RAP 2.5. We agree with the State.

Mr. Mackey failed to raise his constitutional challenges related to the admission of the Static-99R testing at the trial court level. Because Mr. Mackey is challenging the Static-99R for first time on appeal, he must make a showing that satisfies the requirements of RAP 2.5. RAP 2.5(a) allows an appellate court to "refuse to review any claim of error which was not raised in the trial court." The purpose of RAP 2.5 is to give the opposing party a chance to respond and to allow the trial court a chance to correct the error. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 1, at 233 (7th ed. 2011).

Howbeit, a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). For us to accept review under RAP 2.5(a)(3), the appellant must demonstrate that the error is manifest and that the error is truly of constitutional dimension. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). For an error to be manifest, it must have resulted in actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Actual prejudice means the asserted error must have had practical and identifiable consequences in the trial of the case. *Id.*

"[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id.* at 100. An alleged

12

error is not manifest if the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim. *Id.*

Mr. Mackey's claimed error is inadequately preserved under RAP 2.5 because the record lacks a factual development that is sufficient for our review. Therefore, the claimed error is not manifest. Consequently, we decline to review Mr. Mackey's constitutional arguments.

In support of his constitutional arguments that the Static-99R actuarial tool is biased against gay men, Mr. Mackey directs us to https://saarna.org/static-99/, and claims that data from various countries with criminal laws affecting same-sex sexual contact[1] was used in developing the tool, and that the tool uses statistics from prior to 2003 when gay men were prosecuted for violating anti-sodomy laws that criminalized consensual sexual contact with other adult men.[2] However, Mr. Mackey does not provide evidence

---

[1] Citing An Act to Amend the Criminal Code, the Youth Criminal Justice Act and Other Acts and to Make Consequential Amendments to Other Acts, S.C. 2019, c 25 (Can.) (repealing Criminal Code § 159), https://laws-lois.justice.gc.ca/PDF/2019_25.pdf [https://perma.cc/KY5N-WTK2]; *Backgrounder: Section 159 of the Criminal Code*, CAN. DEP'T OF JUST. (Nov. 15, 2016), https://www.canada.ca/en/department-justice/news /2016/11/section-159-criminal-code.html [https://perma.cc/4SMJ-N4TE]; *see A History of LGBT Criminalization*, HUM. DIGNITY TR. (2024), https://www.humandignitytrust.org /lgbt-the-law/a-history-of-criminalisation/ [https://perma.cc/S45M-AQDK].

[2] Citing Riccardo Ciacci & Dario Sansone, *The Impact of Sodomy Law Repeals on Crime*, 36 J. POPULATION ECON. 2519 (2023).

to support his argument that the Static-99R uses the data he claims. In response to Mr. Mackey's argument, the State attached four articles[3] as appendices to its brief.

In placing this court in the shoes of the trial court to determine whether the alleged error is practical and identifiable, the trial court was unaware of the information provided on appeal and, therefore, was deprived of the ability to address the alleged error. Instead, the trial court was presented with the testimony of the State's expert witness, Dr. Judd, and Mr. Mackey's expert witness, Dr. Plaud. Dr. Judd referred to the Static-99R as "the best researched instrument," RP at 440, while Dr. Plaud claimed it was "the most prevalently used actuarial tool." *Id.* at 720.

Because the trial court could not have foreseen the potential error and the record before us lacks sufficient facts, we decline review.

WHETHER THE STATE COMMITTED PREJUDICIAL MISCONDUCT DURING CLOSING ARGUMENT

Mr. Mackey argues that the State's attorney committed misconduct during closing argument by arguing facts not in evidence and by expounding his personal opinion. The

---

[3] R. Karl Hanson & Kelly E. Morton-Bourgon , *The Accuracy of Recidivism Risk Assessments for Sexual Offenders: A Meta-Analysis of 118 Prediction Studies*, 21 PSYCH. ASSESSMENT 1 (2009); L. Maaike Helmus et al., *Static-99R: Strengths, Limitations, Predictive Accuracy Meta-Analysis, and Legal Admissibility Review*, 28 PSYCH., PUB. POL'Y & L. 307 (2022); R. Karl Hanson & Monique T. Bussiere, *Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies*, 66 J. CONSULTING & CLINICAL PSYCH. 348 (1998); Jill S. Levenson et al., *The Relationship Between Victim Age and Gender Crossover Among Sex Offenders,* 20 SEXUAL ABUSE 43 (2008).

State responds that the misconduct was not flagrant and ill intentioned and that Mr. Mackey cannot show prejudice. We agree with the State.

Prosecutorial misconduct is grounds for reversal if "'the prosecuting attorney's conduct was improper and prejudicial.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). The defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). A prosecutor's argument must be confined to the law stated in the trial court's instructions. *State v. Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). When a prosecutor mischaracterizes the law and there is a substantial likelihood that the misstatement affected the jury verdict, the prosecutor's actions are considered improper. *Id*.

When examining a prosecutor's alleged misconduct, the improper conduct is not viewed in isolation. *Monday*, 171 Wn.2d at 675. Instead, the conduct is looked at "in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *Id*. (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). The purpose of viewing the conduct in this light is to determine if the prosecutor's conduct was prejudicial to the defendant, and it will only be viewed as prejudicial when there is a substantial likelihood the misconduct affected the jury's verdict. *Id*. Therefore, when

15

viewing misconduct, the court should not focus on what was said or done but rather on the effect that flowed from the misconduct. *Emery*, 174 Wn.2d at 762.

If a defendant fails to object at trial to the prosecutor's alleged misconduct, then the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Id*. at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id*. at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2012)).

Mr. Mackey points to two comments made by the State's attorney during closing and argues that they were flagrant and ill intentioned standing alone and that the cumulative effect of the comments was prejudicial. We disagree.

When referencing a comment made by Mr. Mackey that Ms. Van Vleet reminded him of his sister, the State commented, "This *I think* is direct evidence of a paraphilic disorder that's still controlling Mr. Mackey's behavior." RP at 995 (emphasis added). This statement was not objected to. Mr. Mackey argues that the phrase "I think" was the State's attorney expressing a personal opinion and that this error could not have been cured by an instruction.

16

In *State v. Jackson*, the court held that the prosecutor's use of the phrase "I think," in the context of recounting evidence and reasonable inferences to be drawn therefrom, was not flagrant and ill intentioned misconduct. 150 Wn. App. 877, 889, 209 P.3d 553 (2009); *see also State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). However, the court in *Jackson* cautioned that "this . . . common linguistic slip" was nonetheless improper and prosecutors should refrain from using the term "I think." 150 Wn. App. at 889.

Here, Mr. Mackey claims that Dr. Judd did not diagnose Mr. Mackey with a paraphilic disorder and that the State's attorney was therefore not recounting evidence when he used the phrase "I think." However, Dr. Judd did diagnose Mr. Mackey with "other specified paraphilic disorder" and confirmed that Mr. Mackey's diagnosis had "pedophilic traits." RP at 496. Further, Ms. Van Vleet testified that Mr. Mackey told her "you remind me of my sister." *Id.* at 278.

Mr. Mackey also claims the alleged inappropriate comment was compounded because it came during the State's rebuttal argument and Mr. Mackey was unable to respond. However, the State's attorney made a similar argument during his initial closing without the inclusion of the phrase "I think" and Mr. Mackey did indeed respond to that argument in his own closing.

Though the State's attorney should have refrained from using the phrase "I think," his testimony did not rise to the level of flagrant and ill intentioned misconduct because he was recounting evidence and the reasonable inferences to be drawn therefrom.

Next, Mr. Mackey claims the State's attorney improperly vouched for Dr. Judd's credibility when he stated, without objection from Mr. Mackey, that Dr. Judd had been "supportive of Justin Mackey's LRA," and that he had written an evaluation favoring Mr. Mackey's conditional release. *Id*. at 957. Mr. Mackey correctly points out that Dr. Judd's support for Mr. Mackey's LRA was not in evidence.

Though the State's attorney's comments regarding Dr. Judd's support for Mr. Mackey's LRA were improper, they were not prejudicial and a curative instruction would have obviated any prejudice. First, there was other evidence of Dr. Judd's credibility and past support for Mr. Mackey. Dr. Judd testified he had been retained as a defense expert in SVP trials many times before. He also testified that Mr. Mackey had been able to "demonstrate insight into his behaviors." *Id*. at 487. Further, the jury instructions reminded the jury that the attorney's comments were *not* evidence:

> The comments of the lawyers during this trial are intended to help you understand the evidence and apply the law. However, it is important for you to remember that the lawyers' remarks, statements and arguments are not evidence. *You should disregard any remark, statement or argument that is not supported by the evidence or the law as I have explained it to you.*

*Id*. at 927 (emphasis added).

18

No. 39369-1-III
*In re Detention of Mackey*

"Juries are presumed to follow instructions absent evidence to the contrary." *State v. Dye*, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013). Though improper, in the absence of an objection, the State's attorney's comments do not rise to the level of conduct so flagrant and ill intentioned that no curative instruction could have cured any prejudice. Further, we hold the cumulative effect of these two isolated comments was not prejudicial. The court's instructions reminded the jury to disregard statements not in evidence.

Affirmed

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Pennell, J.