**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| In the Matter of the Detention of:<br><br>RICK A. MONROE,<br><br>                              Appellant. | No.  47414-0-II<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — Rick Monroe appeals the trial court's order of civil commitment, entered upon a jury's finding that he qualified as a sexually violent predator (SVP).  He argues that (1) a portion of the "to commit" jury instruction was improperly given and not supported by substantial evidence and (2) his counsel was ineffective because his attorney failed to object to the "to commit" instruction.  Because the challenged portion of the "to commit" instruction adequately conveyed the law and was supported by substantial evidence, neither argument succeeds.  Accordingly, we affirm.

FACTS

In 2015, the State filed an amended petition seeking involuntary civil commitment of Monroe as a SVP.[1]  The State alleged that Monroe "currently suffers from a mental abnormality and/or personality disorder . . . which . . . make him likely to engage in predatory acts of sexual violence unless confined in a secure facility."  Clerk's Papers (CP) at 5-6.  The State and Monroe proceeded to a civil commitment trial where numerous witnesses testified, including the State's expert witness, Dr. Harry Hoberman.

---

[1] RCW 71.09.020(18).

Pertinent to this appeal, the State examined Dr. Hoberman to establish that Monroe possessed a mental abnormality or personality disorder that would make him likely to reoffend. Specifically, Dr. Hoberman testified that Monroe suffered from a "mixed personality disorder," which satisfied the statutory definition[2] of personality disorder. Report of Proceedings (Mar. 11, 2015) at 580. Dr. Hoberman concluded that Monroe's mixed personality disorder was derived from an antisocial personality disorder, borderline personality disorder, traits of narcissistic personality disorder, and psychopathy. To diagnose Monroe with psychopathy, Dr. Hoberman relied on a Psychopathy Checklist-Revised (PCL-R), which evaluates a person's likelihood to be a psychopath based on factors related to interpersonal features and social deviance. Dr. Hoberman stated that Monroe had a score of 32 out of 40 on the PCL-R and that an individual with a score over 30 is considered a psychopath. *Id.* at 625. Dr. Hoberman testified that "the higher the score on the PCL-R, the higher the risk for violent behavior, *including sexual offending*." RP at 625-26 (emphasis added). Later in his examination, Dr. Hoberman testified that the average score for males on the PCL-R is about a 6, and reemphasized that "*the higher the score* [on the PCL-R], the greater the risk of . . .*sex offense recidivism*." RP at 678-79 (emphasis added).

---

[2] "'Personality disorder' means an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has onset in adolescence or early adulthood, is stable over time and leads to distress or impairment." RCW 71.09.020(9)

Dr. Hoberman also testified that Monroe had a pedophiliac disorder[3] meeting the definition of a mental abnormality.[4] Dr. Hoberman described Monroe's sexual history, which involved sexual conduct with numerous prepubescent children over the years: AC and AP in 1984, CT in 1998, and TM and AH in 1999. Dr. Hoberman also discussed Monroe's fantasies and feelings of arousal toward prepubescent children, citing Monroe's comments that he did not like bathing his daughters because "[s]omething clicked when [he] saw them naked" and that after seeing TM and AH naked, he "had thoughts of having sex with them." RP at 569-70. Dr. Hoberman further testified that these events caused interpersonal difficulty for Monroe consistent with pedophiliac disorder, referring to his time spent in juvenile detention and in prison for these criminal offenses. Dr. Hoberman concluded that Monroe's "pedophiliac disorder is sufficient as a mental abnormality to cause him serious difficulty in controlling his sexually[ ]violent behavior and *making him likely to engage in predatory acts of sexual violence*." RP at 791 (emphasis added).

During the State's direct examination of Dr. Hoberman, the following exchange occurred, which Monroe relies on for his argument on appeal:

> [THE STATE]: And so going back to the [SVP] definition, do you have an opinion to a reasonable degree of psychological certainty whether, based on Mr. Monroe's mental abnormality or personality disorder, that he is likely to engage in predatory acts of sexual violence if not confined in a secured facility?

---

[3] A person can be diagnosed with pedophiliac disorder if he has recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors involving sexual activity toward prepubescent children for at least a six month period and has either acted on these urges or these fantasies cause marked distress in that person.

[4] "'Mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8).

[DR. HOBERMAN]: I do. . . .

My opinion is that Mr. Monroe is characterized by a mental abnormality, pedophilic disorder, *and* a personality disorder I would describe as a mixed-personality disorder inclusive of antisocial and borderline personality disorder, as well as traits of narcissistic personality disorder and psychopathy, as making him likely to engage in predatory acts of sexual violence if not confined in a secured facility.

RP at 646 (emphasis added).

At the close of each party's side of the case, the jury was instructed on the elements necessary to find Monroe a SVP. Instruction No. 6, the "to commit" instruction, read:

To establish that . . . Monroe is a [SVP], the State must prove each of the following elements beyond a reasonable doubt:

(1) That . . . Monroe has been convicted of a crime of sexual violence, namely rape of a child in the first degree or indecent liberties against a child under age fourteen;

(2) That . . . Monroe suffers from a mental abnormality or personality disorder which causes serious difficulty in controlling his sexually violent behavior; and

(3) That this mental abnormality *or* personality disorder makes . . . Monroe likely to engage in predatory acts of sexual violence if not confined to a secure facility.

CP at 805 (emphasis added). Monroe did not object to this instruction. The jury found that Monroe qualified as a SVP. Based on this finding, the trial court ordered that he be civilly committed.

Monroe appeals.

## ANALYSIS

### I. JURY INSTRUCTION

Monroe argues that the third element of the "to commit" jury instruction was inadequate and not supported by substantial evidence because Dr. Hoberman opined only that both

Monroe's mental abnormality and personality disorder together rendered him likely to engage in predatory acts of sexual violence. We disagree.

We generally do not consider issues raised for the first time on appeal. RAP 2.5(a). One exception is when the error is manifest and implicates a constitutional right. RAP 2.5(a)(3). An error is manifest if it either results in actual prejudice to the defendant, or the party makes a plausible showing that the error had practical and identifiable consequences to the trial. *In re Det. of Reyes*, 176 Wn. App. 821, 842, 315 P.3d 532 (2013), *aff'd*, 184 Wn.2d 340, 358 P.3d 394 (2015). Because Monroe did not object below, he must demonstrate that giving the "to commit" jury instruction was a manifest error affecting a constitutional right.

Monroe argues that his due process right to a fair trial was violated because the State's evidence did not support the third element as written in the "to commit" instruction, which states:

> That this mental abnormality *or* personality disorder makes . . . Monroe likely to engage in predatory acts of sexual violence if not confined to a secure facility.

CP at 805 (emphasis added).

We review jury instructions de novo. *State v. Clausing*, 147 Wn.2d 620, 626-27, 56 P.3d 550 (2002). Jury instructions are sufficient "if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." *State v. Irons*, 101 Wn. App. 544, 549, 4 P.3d 174 (2000). A prejudicial error occurs if the evidence does not support an issue given to the jury. *Clausing*, 147 Wn.2d at 627.

"[M]ental abnormality" and "personality disorder" are alternative means for making the SVP determination. *In re Det. of Halgren*, 156 Wn.2d 795, 810, 132 P.3d 714 (2006). This means that

when there is a single offense committable in more than one way "it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged . . . regardless of unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged."

*Id.* at 809 (alteration in original) (quoting *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976)).

The nature of "alternative means" implies that one or the other means must be proven. The State does not have to prove both a mental abnormality and a personality disorder. The jury must be instructed "that it must unanimously agree as to whether *either* of the two alternative means, mental abnormality or personality disorder, were proved beyond a reasonable doubt." *In re Det. of Pouncy*, 144 Wn. App. 609, 619-20, 184 P.3d 651 (2008) (emphasis added). The record need not show which means the jury unanimously thought was proven as long as there is substantial evidence in the record to support both means. *Halgren*, 156 Wn.2d at 809. In other words, in this situation there must be substantial evidence showing the presence of the mental abnormality and personality disorder and that each one alone makes re-offense likely.

Here, the jury instructions plainly reflect these rules. Jury instruction 4 stated that the State has the burden of proving each element beyond a reasonable doubt. Jury instruction 6 states that one of the SVP elements to be proven is that Monroe's mental abnormality or personality disorder makes him likely to engage in predatory acts of sexual violence if not confined to a secure facility.

Monroe challenges the adequacy of these instructions, contending the State's evidence only supported a jury finding that both his mental abnormality *and* his personality disorder together, rather than one disorder standing alone, made him more likely to engage in predatory

6

acts of sexual violence if not confined in a secure facility. The foundation of Monroe's argument is built upon Dr. Hoberman's testimony stating:

> My opinion is that Mr. Monroe is characterized by a mental abnormality, pedophilic disorder, *and* a personality disorder I would describe as a mixed-personality disorder inclusive of antisocial and borderline personality disorder, as well as traits of narcissistic personality disorder and psychopathy, as making him likely to engage in predatory acts of sexual violence if not confined in a secured facility.

Br. of Appellant at 12 (citing RP at 646) (emphasis added).

Standing alone, Dr. Hoberman's use of "and" could be construed as suggesting that it was only both Monroe's mental and personality disorders together that show his likeliness to reoffend. However, Dr. Hoberman's other testimony supplies substantial evidence for a jury to conclude beyond reasonable doubt that either a mental disorder or personality disorder, standing alone, made Monroe likely to reoffend if not confined.

As to personality disorder, Dr. Hoberman testified that Monroe suffered from psychopathy as a part of his mixed personality disorder, which met the definition of a personality disorder. Dr. Hoberman testified that the average score for males on the PCL-R is about a 6 and that Monroe's score was 32 out of 40, placing him in the range of psychopathy. Dr. Hoberman also testified that "the higher the score [on the PCL-R], the greater the risk of . . .sex offense recidivism." RP at 678-79.

As to mental abnormality, Dr. Hoberman testified that Monroe suffered from a pedophiliac disorder meeting the definition of a mental abnormality. Dr. Hoberman testified that Monroe's "pedophiliac disorder is sufficient as a mental abnormality to cause him serious difficulty in controlling his sexually[ ]violent behavior and *making him likely to engage in predatory acts of sexual violence*." RP at 791 (emphasis added).

From the evidence, a rational juror could have independently found that either (1) Monroe's psychopathy, as part of his mixed personality disorder, was a personality disorder that made him likely to reoffend, or (2) his pedophilia was a mental abnormality that make him likely to reoffend. Thus, because substantial evidence supports both alternative means to establish that Monroe was likely to reoffend, the trial court did not err by giving the instruction.[5] Accordingly, the alleged error is not manifest, and we deem Monroe's challenge waived under RAP 2.5(a).[6]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Monroe next argues that he received ineffective assistance of counsel because his attorney failed to object to the "to commit" instruction. We disagree.

To establish ineffective assistance of counsel, an appellant must show deficient performance and resulting prejudice. *In re Det. of Moore*, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). When an ineffective assistance of counsel claim rests on a failure to object, an appellant must establish that an objection likely would have been sustained. *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010). To show prejudice, the appellant must demonstrate that but for counsel's deficient performance a reasonable probability exists that the outcome of the trial court would have been different. *In re Det. of Stout*, 128 Wn. App. 21, 28, 114 P.3d 658 (2005).

---

[5] Monroe also argues that the "to commit" instruction allowed the jury to speculate and lessened the State's burden of proof, but both those contentions rely on the premise that there is a lack of substantial evidence to support the third element of the "to commit" instruction. Finding that substantial evidence supports this portion of the "to commit" instruction, we do not address these issues further.

[6] We recognize that our analysis under RAP 2.5(a) also has effectively decided the merits of Monroe's argument against him.

As outlined above, the "to commit" jury instruction given was adequate and substantial evidence supported each means. It is highly unlikely, therefore, that defense counsel's objection to the instruction on this basis would have been sustained. Monroe cannot otherwise establish prejudice caused by a proper jury instruction. Accordingly, his ineffective assistance of counsel claim fails.

CONCLUSION

We hold that (1) the challenged portion of "to commit" instruction was proper and substantial evidence supported each alternative means; and (2) Monroe did not receive ineffective assistance of counsel. We therefore affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                             BJORGEN, C.J.

We concur:

JOHANSON, J.

LEE, J.