# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of: | No.  50946-6-II |
| TIMOTHY JOHN MCMAHON, | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, A.C.J. — Timothy J. McMahon appeals the trial court's order committing him to the Special Commitment Center as a Sexually Violent Predator.  McMahon argues that the assistant attorney general committed misconduct during closing argument and that he received ineffective assistance of counsel when his counsel failed to object to the assistant attorney general's improper closing argument.  We disagree and affirm.

### FACTS

McMahon has multiple convictions for child molestation.  In February 2017, the State filed a petition to have McMahon committed as a sexually violent predator.  Two experts, Dr. Mark Patterson and Dr. Brian Abbott, testified at McMahon's commitment trial.

The State called Dr. Patterson to testify.  Dr. Patterson diagnosed McMahon with pedophilia, antisocial personality disorder, exhibitionistic disorder, alcohol use disorder, and cannabis use disorder based on the criteria in the American Psychiatric Associations's *Diagnostic and Statistics Manual of Mental Disorders, Fifth Edition* (2013) (DSM-5).  Dr. Patterson testified

that, in his opinion, McMahon's conditions and disorders met the legal definition of mental abnormality. And, Dr. Patterson specifically testified that alcohol use disorder contributed to McMahon's behavior because alcohol acts as a disinhibitor and reduces McMahon's ability to control his behavior. Dr. Patterson also opined that McMahon met the other requirements to be considered a sexually violent predator.

McMahon called Dr. Abbott to testify. Dr. Abbott testified that he did not believe McMahon suffered from pedophilia or antisocial personality disorder. Dr. Abbott diagnosed McMahon with alcohol use disorder, currently in remission, also based on the DSM-5 diagnostic criteria. Dr. Abbott explained how the alcohol use disorder influenced McMahon's offending:

> Well, it had to do primarily at the time him having a severe alcohol use disorder and how that alcohol use disorder impaired his psychological functioning. So what I saw in Mr. McMahon that I've seen in many other clients is that in these—the extent of alcohol consumption caused impairment in psychological functioning where he began to display personality characteristics that mimicked antisocial personality traits.
>
> So he, clearly when he was using heavily, he would be impulsive, he would be aggressive, he would lack remorse over his—how he hurt other people. He would be irresponsible, reckless; and then when he got into prison, it was not drinking alcohol, the best we know—he didn't show antisocial personality disorder symptoms. And if somebody, if they do have antisocial personality disorder, they would show it in prison as well as out in the community. So that was a strong key to me, diagnostically, that the alcohol use appeared to be the factor that was causing him to act in antisocial ways and have antisocial attitudes.
>
> So my—my opinion was that his sex-offender behavior was related to those characteristics induced by the alcohol use disorder, in terms of impulsivity, lack of remorse, reckless disregard for the safety of others, and also the availability of the victims and his indiscriminate sexual acting out and using them to act out sexually.
>
> So it was more of a, kind of, an antisocial way of relating to the victims in— in a grossly inappropriate sexual ways. But it was driven primarily based on the deterioration and the psychological functioning associated with the alcohol use disorder.

4 Verbatim Report of Proceedings (VRP) at 614-15. Dr. Abbott admitted that he considered alcohol use disorder an acquired or congenital condition. However, Dr. Abbott opined that because he considered McMahon's alcohol use disorder to be in remission, McMahon's alcohol use disorder was not a mental abnormality.

The trial court instructed the jury on the legal definition of a mental abnormality. The instruction stated,

> "Mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit criminal sexual acts to a degree that makes the person a menace to the health and safety of others.
>
> "Volitional capacity" means the power or capability to choose or decide.

Clerk's Papers at 217; *see also* RCW 71.09.020(8).

During closing argument, the assistant attorney general addressed Dr. Abbott's testimony and argued that, contrary to Dr. Abbott's opinion, alcohol use disorder met the legal definition of a mental abnormality:

> [Dr. Abbott] tells us that the available clinical information about Mr. McMahon appears more consistent with the antisocial personality features induced by severe alcohol uses. Alcohol use disorder is a congenital or acquired condition.
>
> He then goes on to tell us that that's leading him to act irresponsibly and impulsively in managing his sexual impulses. So it's affecting his emotional or volitional capacity, and finally, he tells us through the sexually offending behavior towards the victims. Well, it affected his emotional or volitional capacity, which predisposed him to commit criminal sexual acts against his victims. Sounds like a mental abnormality to me. So we can go ahead and check off that box.

6 VRP at 833. McMahon did not object to the State's closing argument.

The jury found McMahon to be a sexually violent predator. The trial court entered an order committing McMahon to the Special Commitment Center.

McMahon appeals.

## ANALYSIS

A. PROSECUTORIAL MISCONDUCT

McMahon argues that the State committed misconduct during closing argument when the assistant attorney general told the jury it could find that McMahon's alcohol use disorder could be a mental abnormality. We disagree.

1. Legal Principles

To prevail on his claim of prosecutorial misconduct, McMahon must establish that the State's conduct was both improper and prejudicial. *In re Det. of Urlacher*, 6 Wn. App. 2d 725, 745, 427 P.3d 662 (2018) (citing *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012)), *review denied*, 192 Wn.2d 1024 (2019). First, we determine whether the conduct was improper. *Id.* Then, if the State's conduct was improper, we determine whether the State's misconduct resulted in prejudice.[1] *Id.*

In closing argument, the State has wide latitude in making arguments and drawing reasonable inferences from the evidence. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). However, the State commits misconduct by misstating the law. *Urlacher*, 6 Wn. App. 2d

---

[1] Because McMahon did not object to the State's comments during oral argument, any error is waived unless the State's conduct was so flagrant and ill-intentioned that an instruction would not have cured any prejudice. *Urlacher*, 6 Wn. App. 2d at 745-46. Because we determine that the State's conduct was not improper, we do not address waiver or prejudice.

at 746. And the State's arguments must be supported by the evidence. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158, *review denied*, 175 Wn.2d 1025 (2012).

2.     No Improper Conduct

McMahon argues that the assistant attorney general's argument was improper because the State could only argue the mental abnormalities that an expert opined McMahon suffered from. This is incorrect.

Because determining whether a person has mental abnormality is based on psychology and beyond the knowledge of the common juror, expert testimony is helpful to the jury's ultimate determination of whether the respondent suffers from a mental abnormality. *See In re Det. of Bedker*, 134 Wn. App. 775, 778-79, 146 P.3d 442 (2006) (Determining whether a particular person possesses a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others "is based upon the complicated science of human psychology and is beyond the ken of the average juror."). Therefore, experts may testify regarding the respondent's mental conditions, diagnoses, and the effect of diagnosed mental conditions on the respondent's behavior. However, in proving a mental condition to support a finding that a respondent suffers from a mental abnormality, the State is not limited to mental disorders included in the DSM testified to by an expert.[2] *In re Pers. Restraint of Young*, 122 Wn.2d 1, 28, 857 P.2d 989 (1993).

---

[2] Although a specific DSM diagnosis is not required, both experts in this case diagnosed alcohol use disorder based on the diagnostic criteria in the DSM.

Here, Dr. Abbott diagnosed McMahon with alcohol use disorder and identified how the alcohol use disorder affected McMahon's behavior. Specifically, Dr. Abbott testified that McMahon's alcohol use disorder caused impulsivity, lack of remorse, and disregard for the safety of others. And because of the effect of alcohol use disorder, McMahon acted out sexually against his child victims. In addition, Dr. Abbott admitted that alcohol use disorder was an acquired or congenital condition. Dr. Abbott's testimony directly supported the facts the State relied on to argue that McMahon's alcohol use disorder met the legal definition of a mental abnormality. Although Dr. Abbott testified that, in his opinion, the alcohol use disorder did not meet the definition of a mental abnormality, that opinion was based primarily on his assessment that McMahon's alcohol use disorder was in remission. The State was permitted to argue a different interpretation of the evidence applied to the law.

Thus, the State did not misstate the law or make arguments that were unsupported by the evidence. The State used the definition of mental abnormality from the jury instructions and the statute. And the State directly referenced Dr. Abbott's testimony to support its argument. The State's argument was a proper argument based on the evidence that was presented at trial. Therefore, McMahon has failed to establish prosecutorial misconduct.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

McMahon also argues that he received ineffective assistance of counsel because his counsel failed to object to the State's closing argument. To establish ineffective assistance of counsel, McMahon must show the counsel's performance was deficient and the deficient performance resulted in prejudice. *In re Det. of Moore*, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

6

"When an ineffective assistance of counsel claim rests on a failure to object, an appellant must establish that an objection likely would have been sustained." *In re Det. of Monroe*, 198 Wn. App. 196, 205, 392 P.3d 1088 (2017).

Because the State's argument was proper, it is not likely that the trial court would have sustained an objection had McMahon's counsel objected to the State's argument. Therefore, McMahon cannot establish deficient performance, and his ineffective assistance of counsel claim also fails. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, A.C.J.

We concur:

Worswick, J.

Cruser, J.