**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56597-8-II |
| Respondent, | |
| v. | |
| THOMAS TOREN NISSEN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Thomas Nissen was charged with child rape and child molestation against his fiancé's niece, HA, after HA reported the abuse to her best friend. Detectives organized a recorded phone call during which Nissen denied the allegations, and the detectives testified at trial that he showed signs of guilt during the phone call. The detectives then conducted their own interview with Nissen, a portion of which was recorded and played for the jury at trial. During the interview, Nissen admitted to two of the three charged incidents and claimed to not remember any others due to alcoholism. Nissen was convicted on all charges.

Nissen appeals his two convictions for child molestation, arguing that (1) the trial court's instruction on voluntary intoxication was a manifest constitutional error, (2) the detectives' testimony regarding Nissen's signs of guilt during the recorded call was a manifest constitutional error, (3) he was deprived of effective assistance when counsel failed to object to both the jury instruction and the detectives' testimony, (4) cumulative error deprived him of a fair trial, and (5) the trial court erroneously imposed community supervision fees when it intended to impose only

mandatory legal financial obligations (LFOs). In a supplemental brief, Nissen asks us to remand for the trial court to strike the $500 crime victim penalty assessment (VPA) and the $100 DNA collection fee from his judgment and sentence. The State agrees that we should remand for the trial court to strike the LFOs from Nissen's judgment and sentence. Nissen does not challenge his second degree rape of a child conviction.

We hold that Nissen has not established grounds for reversal of his convictions. Accordingly, we affirm. However, we remand for the trial court to strike the community supervision fee, the $500 VPA, and the $100 DNA collection fee from Nissen's judgment and sentence.

## FACTS

### I. BACKGROUND

In April 2020, HA disclosed to her best friend that her aunt's boyfriend was touching her inappropriately. HA's friend then informed HA's mother, who asked HA what had been going on. After HA told her mother that Nissen "had been touching her under her clothes for the past several years," her mother called the police. Verbatim Report of Proceedings (VRP) (Nov. 17, 2020) at 106.

Detective Steve Beck and Detective Sergeant Paul Logan arranged for a "confrontation call" in which HA's mother confronted Nissen about HA's allegations while the conversation was recorded. *Id.* at 116. During the call, Nissen generally denied the allegations. After this call, the detectives went to Nissen's workplace to conduct their own interview. At some point during the interview, the detectives began recording. During the detectives' interview, Nissen admitted that there were two occasions where he remembered touching HA's vagina.

Nissen was arrested and charged with one count of first degree child molestation, one count of second degree child molestation, and one count of second degree child rape.

## II. EVIDENCE PRESENTED AT TRIAL

At trial, HA's best friend, HA's mother, Detective Beck, and Detective Sergeant Logan testified to the above facts. HA testified that there were probably 15-16 occasions where Nissen had touched her for a long period of time, and she described the three specific instances for which Nissen was charged. HA's aunt, who was Nissen's fiancé, also testified about HA's visits at her home. When asked about whether Nissen drank alcohol, the aunt stated: "When we first started dating, he didn't drink that much, but up until (indiscernible) the end, he was probably drinking an 18-pack of beer a night." *Id.* at 133. HA's aunt did not testify as to any specific occasions when Nissen was drinking when HA was at their residence.

During Detective Beck's testimony, the State asked questions about the confrontation call with HA's mother, and the following exchange occurred:

Q       And from an investigative point, were there any statements made that were indicative of, to you, of wrongdoing?

A.      Yes.

Q.      Describe.

A.      At one point during the conversation, he said he never intentionally did anything to [HA], which I thought was weird from my investigation experience . . .
        [HA's mother] confronted him about whether or not [HA] was lying and he would never say that she was lying. That was something else that was a red flag for me.

*Id.* at 117-18. Defense counsel did not object to this testimony.

The State similarly asked Detective Sergeant Logan about the confrontation call:

Q    Did you find anything significant in an investigative perspective about the things that Mr. Nissen said on that call?

A    I did.

Q    Like what?

A    While he continued to say I did not do these things, I did not do this, [HA's mother] asked him repeatedly is -- is [HA] lying, are you telling me she is lying, and he continued to say no, she is not -- she's not -- I'm not saying she is lying. He would continue to say that, you know, she is a good kid. She is not a liar. I'm not saying that she is lying.

And based on my experience in doing these for quite a number of years, when somebody is accused of something, there's -- that's -- that's a response I recognize as somebody who is guilty of what they are being accused of, and it is their [ ] reaction because they don't want to -- they want to say they didn't do it, but calling the person that they care about, have feelings about or feel sorry for, they don't want to call them a liar, so that was one thing and there were several others.

*Id.* at 176-77. Defense counsel did not object to this testimony. The recording of the detectives' interview with Nissen at his workplace was played for the jury during Detective Sergeant Logan's testimony.

During the recorded interview, Nissen admitted that he only vaguely remembered touching HA's vagina on two occasions, that he did not know why he touched HA, and that he felt disgusted with himself. One of the instances he remembered, and described for the detectives during the interview, was the instance for which he was charged for rape because he penetrated HA. He stated that he did not " 'have any recollection of [other] instances. I'm not denying that - - I think [HA] is telling the truth. There's obviously been other instances that I don't - - can't recall, probably due to my alcoholism or alcoholic - - I drink too much.' " Br. of Appellant at 8 (quoting Ex. 16 at 3:08 to 3:34). Although he did not remember instances other than the two he admitted to, he could not

4

" 'know for sure they didn't happen,' " but he didn't " 'know why it happened.' " Br. of Appellant at 8-9 (quoting Ex. 16 at 5:20 to 7:10).

Nissen did not present any evidence at trial.

### III. Jury Instruction and Verdict

Nissen did not propose an instruction on voluntary intoxication. The State, however, proposed an instruction that was a modification of the Washington Pattern Jury Instruction on voluntary intoxication. The modified instruction proposed by the State read "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition." Clerk's Papers (CP) at 95. There was no discussion of this proposed instruction on the record. When asked if the defense had any objection to the instructions the court planned to give, defense counsel indicated she did not. The modified voluntary intoxication instruction was given as "Instruction No. 18." *Id.* at 29.

In addition, the jury was instructed that "[s]exual contact means the touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desires of either party." *Id.* at 28. During closing, defense counsel stated that Nissen "doesn't know why he did it and that he was drunk. And, honestly, I don't know why. He doesn't know why. I can't get inside of his head and neither can you guys. But the normal signs that someone would be sexually gratified are not there." VRP (Nov. 18, 2020) at 110.

The jury found Nissen guilty on all three counts. The jury also found that the child molestation counts were part of an ongoing pattern of sexual abuse, but did not make the same finding as to the child rape. Nissen appeals.

DISCUSSION

I. VOLUNTARY INTOXICATION INSTRUCTION

Nissen argues that the voluntary intoxication instruction given to the jury was a manifest constitutional error because it violated his constitutional right to present a defense as to the two counts of child molestation. The State argues that Nissen was not entitled to a voluntary intoxication instruction. We hold that Nissen failed to preserve this challenge.

A. LEGAL PRINCIPLES

We may decline to review claims of error that the defendant did not raise in the trial court. RAP 2.5(a). "Generally, a party who fails to object to jury instructions below waives any claim of instructional error on appeal." *State v. Knight*, 176 Wn. App. 936, 950, 309 P.3d 776 (2013). However, a defendant can raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). This exception "does not permit *all* asserted constitutional claims to be raised for the first time on appeal." *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007). Rather, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

After determining whether the alleged error is of constitutional magnitude, we assess whether the error is manifest. *Id.* at 99. Error is manifest under RAP 2.5(a) if the appellant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' "*Id.* (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). The defendant bears the

burden of demonstrating that the alleged error is both manifest and of constitutional magnitude. *Knight*, 176 Wn. App. at 950-51.

B. ANALYSIS

Because Nissen did not object below, he must demonstrate that the voluntary intoxication instruction given to the jury was a manifest error affecting a constitutional right. *In re Det. of Monroe*, 198 Wn. App. 196, 201, 392 P.3d 1088 (2017).

The instruction given to the jury read as follows: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition." CP at 29. The pattern instruction includes this sentence, but continues: "However, in determining whether the defendant [acted] [or] [failed to act] with (fill in the requisite mental state), evidence of intoxication may be considered." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.10 (5th ed. 2021).[1] Nissen argues that the failure to include the second sentence from the pattern instruction precluded his argument that he was not touching HA for the purpose of sexual gratification due to his intoxication.

Nissen concedes that he was able to make this argument to the jury, but he contends that Instruction No. 18 mooted this argument. Even assuming that Nissen has raised an issue of constitutional magnitude, he has not shown that the error is manifest. Nissen points to the evidence that (1) he was consuming as many as 18 beers per night, and (2) Nissen could only remember two of the instances of touching HA due to his drinking. These were the *only* two pieces of evidence at trial that related to Nissen's drinking. The first piece came from HA's aunt's testimony, and the

---

[1] Although this jury instruction has been changed since Nissen's trial, the changes were not substantive. Therefore, we cite to the current version.

second piece came from the recorded interview with the detectives that was shown to the jury, where he merely stated he did not remember other occasions where he molested HA " 'probably due to my alcoholism.' " Br. of Appellant at 8 (quoting Ex. 16 at 3:08 to 3:34).

Nissen has not shown that the failure to include the second sentence of the pattern instruction had practical and identifiable consequences in his trial where there was minimal evidence of his drinking at all, and no evidence that he was not able to act for the purpose of sexual gratification. Nissen's inability to remember the touching, or inability to remember why he did it or how he felt when he did it, does not inform the question of whether he could act for the purpose of sexual gratification at the time of the sexual contact. Accordingly, we hold that Nissen's claim of error is waived because he fails to show the alleged error is manifest.[2]

## II. OFFICERS' TESTIMONY CONCERNING GUILT

Nissen argues that the testimony from Detective Beck and Detective Sergeant Logan regarding signs of guilt during the confrontation call was manifest constitutional error. The State concedes that both officers improperly expressed their opinion as to Nissen's guilt but argues that this was not manifest constitutional error. We hold that Nissen failed to preserve this challenge.

---

[2] We reject the State's argument that Nissen was not entitled to an instruction on voluntary intoxication and therefore no error could have flown from the trial court giving the doctored version of it that was proposed by the State. This instruction is a defense instruction, and it is not designed to be chopped in half as the trial court did here. In the absence of the second sentence of the instruction, the instruction lacks context and could lead the jury to conclude that intoxication cannot be considered by the jury at all in determining whether the State met its burden to prove the defendant acted with the requisite mental state for the crime. Stated another way, if Nissen was not entitled to an instruction on voluntary intoxication then neither was the State.

A. Legal Principles

"A party may assign evidentiary error on appeal only on a specific ground made at trial." *Kirkman*, 159 Wn.2d at 926. A party's failure to object to testimony at trial deprives the trial court of the opportunity to cure the error, either by striking the testimony or providing the jury with a curative instruction. *Id.* at 935.

As explained above, we may decline to review claims of error that the defendant did not raise in the trial court unless the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Error is manifest under RAP 2.5(a) if the appellant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *O'Hara*, 167 Wn.2d at 99 (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935).

B. Analysis

Nissen did not object to the testimony he now challenges on appeal. Nissen must, therefore, show that admission of the testimony was manifest error affecting a constitutional right. *Kirkman*, 159 Wn.2d at 926. Although opinion testimony regarding the defendant's guilt implicates the constitutional right to a jury trial, this is not automatically reviewable as a manifest constitutional error. *State v. Barr*, 123 Wn. App. 373, 380, 98 P.3d 518 (2004). The court must still determine whether the error had " 'practical and identifiable consequences in the trial of the case' " to determine whether it is manifest. *Id.* at 380-81 (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).

Both parties discuss *Barr* on this issue. In *Barr*, the defendant was charged with first degree rape, and he contended at trial that the victim was the aggressor. *Id.* at 376-77. At trial, a law

enforcement officer was asked about his interview with the defendant at the police station, including at least five questions about whether the defendant behaved in a way that suggested he was being deceptive. *Id.* at 378-79. A video of the interview was shown to the jury. *Id.* at 378.

The officer testified that the defendant showed signs of deception in several ways, including verbalization of the fear of going to prison, which according to the Reid Investigative Technique, means " '*people feel guilty and [ ] they realize there [are] consequences and lots of times they'll verbalize those fears*.' " *Id.* at 378. The officer was also asked about nonverbal cues, such as whether there were changes in the defendant's breathing or voice. *Id.* at 379. The court concluded that this testimony raised a constitutional issue because witness testimony that expresses an opinion as to the guilt of a defendant violates the right to a jury trial. *Id.* at 380-81. The court further held that the error was manifest because the officer's assessments of credibility "were a crucial part of the State's case." *Id.* at 381.

Without explaining the practical and identifiable consequences of the detectives' testimony in his case, Nissen claims that the detectives' testimony here similarly opined on Nissen's guilt and, therefore, is manifest constitutional error like the testimony in *Barr*. As the State points out, *Barr* is factually distinguishable in that the defendant and the victim had "two different versions of what happened," whereas Nissen admitted to two of the three incidents for which he was charged. *Compare Id.* at 376, *with* Br. of Appellant at 6-7 (quoting Ex. 16 at 3:35 to 4:36 and 7:13 to 7:33). Furthermore, the jury heard Nissen's recorded interview where he admitted touching HA's vagina on two occasions, including one instance where he penetrated HA, and stated that he did not know why he did it, but that he felt disgusted with himself. Although Nissen claimed not to remember other instances due to intoxication, he also stated that he thought HA was " 'telling

the truth,' " and that there had " 'obviously been other instances' " of Nissen molesting HA. Br. of Appellant at 8 (quoting Ex. 16 at 3:08 to 3:34). The detectives' testimony, which included two questions and responses each, was not, therefore, critical to the State's case. Nissen cannot show that any error was manifest.

Accordingly, we hold that Nissen failed to preserve this challenge.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Nissen argues that he was denied effective assistance of counsel when defense counsel failed to object to Instruction No. 18 and to the detectives' testimony concerning signs of Nissen's guilt during the confrontation call. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient, . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Performance is deficient if it falls below an objective standard of reasonableness based on the record established at trial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We need not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

For the same reasons that Nissen could not establish that either of the alleged errors identified above had practical and identifiable consequences in his trial, Nissen cannot establish that there is a reasonable probability that, but for defense counsel's failure to object, the outcome

of the proceedings would have been different. As a result, Nissen fails to establish prejudice, and we reject his claims of ineffective assistance of counsel.

## IV. CUMULATIVE ERROR

Nissen argues that cumulative error deprived him of a fair trial as to counts 1 and 2. "Under the cumulative error doctrine, we may reverse a defendant's conviction when the combined effect of errors during trial effectively denied the defendant [their] right to a fair trial, even if each error standing alone would be harmless." *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010). Where, as here, there are few or no errors and the errors, if any, have little or no effect on the outcome of the trial, reversal is not required. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Because Nissen has not identified multiple errors, the doctrine does not apply here.

## V. LFOS

Nissen argues that the trial court erroneously imposed community custody fees in his judgment and sentence when the court intended to impose only mandatory LFOs. In a supplemental brief, Nissen asks us to remand for the trial court to strike from his judgment and sentence the $500 VPA and the $100 DNA collection fee based on recent amendments to RCW 7.68.035 and RCW 43.43.7541.[3]

---

[3] *See* LAWS OF 2023, ch. 449, § 1 (adding language "The court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent" to RCW 7.68.035(4)); LAWS OF 2023, ch. 449, § 4 (eliminating DNA collection fee from RCW 43.43.7541). Both amendments provide that the court shall waive these fees upon the defendant's motion if they were imposed prior to the effective date of the amendments. LAWS OF 2023, ch. 449, § 1; LAWS OF 2023, ch. 449, § 4.

No. 56597-8-II

The State concedes that we should remand for the trial court to strike these fees. We accept the State's concession. Accordingly, we remand for the trial court to strike the community supervision fee, the $500 VPA, and the $100 DNA collection fee.

CONCLUSION

We hold that Nissen has not established grounds for reversal of his convictions and, therefore, affirm. However, we remand for the trial court to strike the community supervision fee, the $500 VPA, and the $100 DNA collection fee from Nissen's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

VELJACIC, J.

PRICE, J.

13